POND *v.* STATE OF INDIANA.

[No. 29,127. Filed September 17, 1954. Rehearing denied October 27, 1954.]

*Smith & Yarling,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Frank E. Spencer,* Deputy Attorney General, for appellee.

DRAPER, J.—The appellant was charged, by way of three separate indictments, with the kidnapping of one Paul Dryburg, the kidnapping of one Carol Griffey, and the rape of said Carol Griffey. The record discloses a plea of not guilty to each charge, waiver of trial by jury, and a trial to the court of the three charges at the same time. On February 28, 1950, the appellant was found guilty by the court and sentenced to life imprisonment on each of the kidnapping charges. He was also found guilty of assault with intent to rape and was sentenced to imprisonment for one to ten years.

More than three years later, on May 28, 1953, the appellant filed a petition for permission to file a belated motion for new trial, and such proceedings were thereafter had that the petition was denied, but the trial court, on its own motion, granted the appellant thirty days within which to file a motion for new trial. A joint motion was filed and overruled by the court, and thereupon the appellant was permitted to appeal as a pauper; a record was prepared and furnished to appellant; and counsel was appointed to prosecute this appeal on his behalf.

Because of the nature and gravity of the offense charged, and the severity of the penalty imposed, we lay aside procedural questions raised by the attorney general, and proceed to the merits of the case.

The evidence discloses that at nine o'clock on the

morning of August 1, 1950, Carol Griffey and Paul Dryburg went to Willard Park in the city of Indianapolis to swim. They are cousins, and at the time of the alleged offense they were each nine years of age. They were unable to swim there because the pool was being drained. The appellant, who was loitering nearby, told them he would take them to another park. They went to appellant's car, which was parked in the street near the park, and started out. Carol wanted to call from a phone in a drugstore at the park to get her grandmother's permission to go, but she was unable to call because the appellant would never stop at a drugstore, always saying there was a drugstore further up. He finally said they might as well let it go, since their grandmother probably wouldn't let them go.

The appellant thereupon drove the children over several dirt roads out into the country. After attempting to drive into a cemetery, unsuccessful because it was barred, the appellant stopped by an old shack. He had previously made the boy get from the front into the back seat. We deem it unnecessary to go into detail concerning the removal of the lower part of the child's bathing suit and her panties, which she had on under her dress, her outcries, the boy's attempt to get out of the car, and the like. The evidence discloses three separate acts of intercourse, or at the least attempted intercourse, with intervals between during which the car was driven about. The appellant did not strike either of the children. He did, however, threaten to strike them, and threatened to make the girl perform an unnatural act upon him if she refused to submit to his attempts at sexual intercourse.

About one o'clock in the afternoon the appellant drove the children back to the vicinity of Willard Park, where he let them out. Carol went home. She was flushed

and excited, and immediately told her mother what had happened, and her mother called the police. A thorough physical examination was impossible because she was so sore and irritated. A mild erythema was found. No spermatazoa noted.

The appellant was arrested three days later. He then denied he had been to Willard Park at all that day and insisted he had never seen the children. He later testified, however, that he had taken the children in his car for the purpose of taking them to the other park though he denied any intent to kidnap or rape.

Burns' 1942 Repl., §10-2901, under which the kidnapping indictments were drawn, reads as follows:

"Whoever kidnaps, or forcibly or fraudulently carries off or decoys from any place within this state, or arrests or imprisons any person, with the intention of having such person carried away from any place within this state, unless it be in pursuance of the laws of this state or of the United States, is guilty of kidnapping, and, on conviction, shall be imprisoned in the state prison during life."

The appellant says he could not be found guilty of kidnapping because there was no proof that he carried the children away forcibly, nor that he fraudulently decoyed them away, the element of either force or fraud being an essential element of the crime. We disagree.

The appellant testified he intended to take the children to the other park and failed to do so only because he lost his way. No one did or could testify in terms that the appellant's intentions were otherwise. But the trial court was not bound to credit that testimony of the appellant. On the contrary the court had the right to gather the appellant's motives from his actions and conduct, which often speak louder than words. His conduct would appear to have been entirely inconsistent

with his assertions in many respects. We shall mention a few of them.

The appellant refused the children an opportunity to call their grandmother, though they asked to do so. When it was found that the pool at Willard Park was not usable he told them he went to Ellenberger Park, though it appears from the evidence that he himself did not know where said park was located. His attempt to enter a cemetery would appear to be inconsistent with his assertion that he purposed only to get to another park. After becoming "lost" he inquired directions from no one. On the contrary when the children sighted a tractor and cried for help he told them to shut up. When two boys were sighted he put Carol from the weeds near the car back into the car and drove away, later returning to the same spot and renewing his assault upon her there At first the boy sat on the front seat between the girl and the appellant. When the appellant made the boy get into the back seat the boy tried to get out of the car, and the appellant pulled him back and told him to get back in there or he would slap the ———— out of him. Though the appellant claims to have been lost he apparently had no difficulty in returning to Willard Park, in the vicinity of which he left the children. Add to these circumstances the appellant's initial denial that he had been to the park or seen the children that day, and the shockingly obscene and lecherous conduct which he himself admitted under oath, and it must appear that the trial court was eminently justified in believing that the appellant did lure the children into the car and take them away with false promises that he would take them to another park to swim with no intention of, in fact, doing so. We find no similarity between this case and the cases of *Thompson* v. *State* (1939), 215

Ind. 129, 19 N. E. 2d 165; and *Eberling* v. *The State* (1894), 136 Ind. 117, 35 N. E. 1023, to which appellant has directed our attention.

It is next urged that a proper application of *Burton* v. *State* (1953), 232 Ind. 246, 111 N. E. 2d 892, to the facts in this case requires a reversal here, since in this case, as in that one, the female complainant underwent no psychiatric examination.

But in the Burton case this court expressly disclaimed any intention to indicate that there must be a psychiatric examination of the prosecutrix in every case involving a sex crime. The court there made it clear that it regarded such procedure as necessary only in those cases where the facts and circumstances left doubt of the guilt of the accused. See also *Harvey* v. *State* (1953), 232 Ind. 574, 114 N. E. 2d 457.

This case is unlike the Burton case in several important respects, some of which we shall point out. In this case the appellant was a total stranger to the children, while in the Burton case the accused was the father of the prosecuting witness, and there existed a background of family discord and strife wholly absent here. In that case the guilt of the accused depended largely upon the testimony of the girl alone, while here another witness of a different sex, whom the appellant did not molest or offer to molest sexually, testified concerning his conduct. The similarity of the children's testimony concerning what happened does not seem strange considering the fact that they were together throughout this regrettable occurrence. In this case, as in the Burton case, the children were told by their mother to tell the truth.

But there is a further marked dissimilarity between the cases. In the Burton case no admissions were made

such as those here made by the appellant. Without going into too much sordid detail, the record here shows that this appellant, a married man forty-four years of age, testified under oath in open court that despite his denials when arrested, he was in fact at Willard Park that morning, and he did see the children and take them into his car. He further testified that the little girl was the aggressor; that she took off her clothes and exposed herself to him to show him she was big enough to make love to him, after he told her she was not big enough. He testified he held her in his arms, and kissed her, and felt of her, but not say or do all of the things the children testified he said and did.

An experienced trial court saw and observed all of the witnesses and heard their testimony. He heard the appellant admit he was a narcotics addict,[1] and he was advised of the appellant's extensive previous record. He was also advised concerning the environment and habits and home life of the children, and the manner in which they had been taught and reared. This court can by no means say that the trial court erred in refusing to believe that the appellant went no further with the girl than his admissions under oath took him.

Other specifications of the motion for new trial are not urged here The attorney for the appellant, who ably briefed this case, rightly concedes that they are wholly unsupported by the record in this case, which is duly certified as being correct and complete.

A careful examination of the record before us leaves us in no doubt. The judgment should be affirmed.

So ordered.

---

1. There is nothing to indicate that the appellant was under the influence of narcotics at or near any time here involved.

Flanagan, C. J., Bobbitt, Emmert and Gilkison, JJ., concur.

Note.—Reported in 121 N. E. 2d 640.