THOMPSON *v*. STATE OF INDIANA.

[No. 27,097. Filed February 13, 1939.]

*Scifres & Hollingsworth,* for appellant.

*Omer S. Jackson,* Attorney General, and *Glen L. Steckley,* Deputy Attorney General, for the State.

ROLL, J.—Appellant was charged by affidavit with the crime of kidnapping as defined by §10-2901 Burns' St. Ann. 1933, §2418 Baldwin's Ind. St. 1934. There was a motion to quash the affidavit, which was overruled. Trial was had by jury, which returned a verdict

of guilty. The court overruled appellant's motion for a new trial. The errors assigned relate to the overruling the motion to quash, and his motion for a new trial.

The affidavit upon which appellant was tried, omitting the formal parts, reads as follows:

"Rosalie Hawkins being duly sworn upon oath says that within said County of Boone, State of Indiana, on or about the 4th day of August, 1935, the said Roy Thompson did than and there unlawfully, feloniously, fraudulently and forcibly decoy and carry off and kidnap one Rosalie Hawkins from her, the said Rosalie Hawkins place of residence in said county and said acts were not then and there done in pursuance of the law of the State of Indiana or of the United States as affiant is informed and verily believes. Contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Indiana."

Appellant says that the affidavit is defective in that it does not allege an intent to kidnap or state facts which on their face show intent to kidnap.

The statute defining the offense reads as follows:

"Whoever kidnaps, or forcibly or fraudulently carries off or decoys from any place within this state, or arrests or imprisons any person, with the intention of having such person carried away from any place within this state, unless it be in pursuance of the laws of this state or of the United States, is guilty of kidnapping . . ."

The question presented by the motion to quash was before this court in the case of *Boes* v. *State* (1890), 125 Ind. 205, 206, 25 N. E. 218. The following excerpt from that opinion is sufficient.

"As we construe this statute, it is composed of two branches or subdivisions. To constitute a crime under the first subdivision there must be a carrying, or decoying, of the person against whom the wrong is committed, away from his place of residence, forcibly or fraudulently. .

"Under the second subdivision, to constitute the crime, it is not necessary that the person against whom the wrong is committed be compelled, or induced, to leave his place of residence. *State* v. *Sutton,* 116 Ind. 527; *State* v. *Kimmerling,* 124 Ind. 382.

"The definition given to the crime, in the first subdivision, necessarily involves an intentional carrying, or decoying, away from the place of residence, and hence the Legislature could have had no purpose in including, as a part of the definition of the crime under that subdivision, the words 'with the intention of having such person carried away from his place of residence.' It would be mere tautology.

"But under the second subdivision the crime intended to be embraced in the said statute would be incompletely defined without the employment of the said words."

We hold that the affidavit was sufficient.

In order to properly understand the evidence it is necessary to have in mind the various names of the various actors. The prosecuting witness was Rosalie Hawkins, a girl seventeen years of age. Rosa Frazier, the grandmother of Rosalie Hawkins, and with whom Rosalie had lived since she was a few days old, and as she stated, was the only mother she ever knew. David Harold, uncle of Rosalie Hawkins, and the son of Rosa Frazier, and who was twenty-nine years of age. These three lived together as one family on a farm a short distance east of Terhune, Boone County, Indiana. Roy Thompson, about thirty-two years old, and a mechanic by trade; Max Martin, a friend of appellant; Chester Ogle, boy friend of Rosalie Hawkins, and to whom she was engaged.

Appellant and Max Martin met Rosalie Hawkins, Rosa Frazier, and Eddie Spencer on Sunday, July 28, 1935, at the home of a Mrs. Hayworth, who lived just west of Indianapolis. It appears that appellant and Rosalie Hawkins became very friendly a short time

after they met, and he took her home that evening, accompanied by Max Martin. He and Max Martin went to the Frazier home again on Monday or Tuesday night. Arrangements were made to go to Louisville, Kentucky, the following Friday. The party was to be composed of appellant, Rosalie Hawkins, Rosa Frazier, Eddie Spencer, and Max Martin. It seems that Chester Ogle was present when arrangements for this trip were made, but made no objections. Instead of waiting until Friday to start to Louisville, appellant and Max Martin drove to the Frazier home Thursday evening, and the party started for Louisville that night about 10:00 o'clock and arrived at Louisville about six or seven o'clock Friday morning. They left Louisville about three that afternoon, arriving home about 10:00 o'clock that night.

On Saturday night about 8:00 o'clock appellant and Max Martin again went to the Frazier home. When they arrived they found Rosalie Hawkins, Chester Ogle, Rosa Frazier, and Eddie Spencer in the home. Chester Ogle and Rosalie Hawkins were in the kitchen together. Appellant went into the kitchen, and Max Martin came in and some one said something about going to a dance, some place in the neighborhood. Rosalie Hawkins refused to go. Then the suggestion was made that they take a drive. Again Rosalie objected. Rosa Frazier and appellant went to Terhune and got a pint of liquor. They returned in about one and one-half hours. When they got home appellant went around the house on the west side and testified that he found Chester Ogle and the prosecuting witness in a compromising position. That they jumped up and ran around to the back porch. Rosalie Hawkins testified that they were not under the tree on the west side of the house, but were sitting on the back porch when appellant came around there. Anyway a quarrel between appellant

and Rosalie started. All agree that appellant said that Rosalie and Chester should get married, and that he insisted they marry right away. Chester said he did not have enough money. Appellant offered to furnish the money and to get Chester a job. Rosalie stated that she did not want his dirty money. Rosalie was crying and talking loudly. It was during this quarrel that appellant told Chester Ogle that he (appellant) was in love with Rosalie, and that she had promised to marry him. That they became engaged on the return trip from Louisville. He also said that he had had sexual intercourse with Rosalie while on the Louisville trip, and offered to prove it by Mrs. Frazier and Max Martin. Rosalie testified that the question was put to Mrs. Frazier and Max Martin and that they both nodded their heads, yes. During most of this time Rosalie was crying. Max Martin in the meantime had lain down on one of the beds and gone to sleep. Chester Ogle's brother came along about midnight, and Chester left and went home with him. After Chester left Rosalie testified something was said by appellant to the effect that he would kill Chester Ogle if he (Chester Ogle) didn't marry Rosalie and that Chester and Rosalie had to get married. That appellant said something about machine guns. About one o'clock appellant told Rosalie to take off her clothes and go to bed. That she did. Soon after she got in bed appellant came in her bedroom and told her to get up. Rosalie inquired what for, and appellant replied, that she would find out soon enough. Rosalie got up, and dressed and Rosa Frazier, Rosalie Hawkins and appellant went out and got in appellant's car. Appellant walked beside Rosalie, and had hold of her arm. When they reached the car appellant opened the back door, and Rosalie got in the back seat. Appellant asked Mrs. Frazier if she didn't think Rosalie should ride in the front seat with him.

Rosalie got in the front seat with appellant and Mrs. Frazier in the rear seat. This was about 1:30 a. m. Sunday morning. They drove west about ¾ of a mile, south 1 mile, west 1½ miles, south 1 mile when they came to a cemetery. Here appellant stopped his car and flashed his lights off and on. Rosalie asked what he was doing, and he answered that he was signalling his machine gun men. That they would not kill Chester if she did what he wanted her to do. They then drove south about ¼ mile and then turned west to a log house. Appellant stopped his car, and all got out. Appellant took the cushion out of the back seat and put it on the ground beside the car and engaged in sexual intercourse with Rosalie Hawkins; the grandmother with full knowledge of what was occurring, stood on the other side of the car. Rosalie made no out cry or resisted the advances of appellant in any way. Her own statements are to the effect that she consented thereto. Immediately thereafter they returned to the Frazier home. Rosalie Hawkins stated that when they reached home she slept on the davenport and appellant laid on the floor beside the davenport. Rosa Frazier testified that appellant slept in the car. The next morning about six o'clock appellant asked Rosalie to go to town with him to get some cigarettes. They drove over the same route that they had taken the night before, and when they reached the log house, he again stopped the car, and he said that he wanted to show her where the machine gun men were last night, and for her to go into the house. When they got in the house, he asked her to lie down on the floor. Again they engaged in illicit intercourse. They then went back home and had breakfast. Rosalie did not eat any breakfast, but went to bed and slept most of the morning. Her uncle Davey Harold and Max Martin left the Frazier home sometime that morning to take Eddie Spencer to his sister's

home. That left appellant, Rosalie Hawkins and her grandmother there in the home. About one o'clock appellant came into the bed room where Rosalie was lying on the bed and told her to take off her clothes, which she did and again they engaged in sexual intercourse, and then engaged in sexual perversion. About two thirty or three o'clock other people came to the Frazier home. One was Rosalie's cousin, Gilbert Harrison. Some of the men had been drinking. She told her uncle Davey Harold what she had done, and Davey said he would kill appellant, and got a rifle. Gilbert Harrison told him if he did he would get himself in trouble. Gilbert told her to go to his home and tell what had happened. She and Gilbert started, but Gilbert was so intoxicated he could hardly walk, and Mrs. Frazier called to them and they came back. A little later Rosalie did go to the Harrison home and told her story to her uncle and they called the sheriff. Appellant and Max Martin left before the sheriff arrived and were not arrested for about a week thereafter. The above facts are in substance the evidence given by Rosalie Hawkins herself. The above facts were testified to by the prosecuting witness Rosalie Hawkins. Her story is as to the essential facts uncorroborated.

The appellant and the grandmother denied that any immoral relations were had between appellant and Rosalie Hawkins on the trip to Louisville or on Saturday night or Sunday at the Frazier home, and that no stop was made on the automobile ride Saturday night. Also Max Martin testified that he knew nothing about any improper conduct by appellant and Rosalie Hawkins.

The particular acts relied upon by appellee as constituting kidnapping is the ride appellant, Rosalie Hawkins and Rosa Frazier took Sunday morning about 1:30 a. m.

Appellee contends that the facts above stated, prove a forcible or fraudulent carrying off from a place within this state. There could be no fraudulent representations, and there is no contention by the state that fraud was in any way used, or enters into a determination of the question here presented. The claim is made by the state that force was used, and lay stress upon the fact that appellant had a hold of the prosecutrix's arm when they left the house and walked to the car. Also that appellant commanded her to lie down on the automobile cushion, out by the log house. No claim is made by the witness that appellant, in taking her by the arm, did any more than escort her to the car. No claim by the witness that any force was applied to get her to go.

It is argued that the prosecuting witness was put in fear by what appellant said about Chester Ogle, and by reason thereof she accompanied appellant and her own grandmother on the ride Saturday night, and had it not been for such threats she would not have gone with him. But the next morning about six o'clock she without force or fear, accompanied appellant alone, to the same place and consented to and participated in the same kind of conduct of which she was guilty the night before. Again about one o'clock that afternoon she and appellant not only engaged in sexual intercourse but was guilty of sexual perversion. Her own statement was to the effect that she made no resistance or objections to her treatment by appellant.

Secreting the prosecuting witness or carrying her away from her home or in some way depriving her of the ordinary means of securing her liberty or depriving her of the friendly assistance of the law are ingredients of the charge of kidnapping. *State* v. *Kimmerling* (1890), 124 Ind. 382, 24 N. E. 722.

Of course, if by threats appellant so aroused the fear

of the prosecuting witness as to intimidate her and overcome her will and thereby compelled her to ██ consent to go with him on the ride Saturday night, accompanied by her grandmother, when she would not have gone, then the offense of kidnapping would have been complete. *State* v. *Altemus* (1907), 76 Kan. 718, 92 Pac. 594. But such is not the case here. There is no substantial evidence that the prosecuting witness was forced by threats or that she was intimidated by anything said or done by appellant, that impelled her to go with him. The evidence shows that appellant and the prosecuting witness were very much infatuated with each other. That she regarded him as a lover. She stated that appellant told her at different times that he was in love with her, and that he made that statement on Saturday night in the presence of several other people, including Chester Ogle, to whom she said she was engaged to marry. Notwithstanding the conduct of appellant and the prosecuting witness which was most offensive to decent people and most repulsive, yet such facts do not prove appellant guilty of the crime of kidnapping. Appellant may be guilty of other statutory crimes but there is no evidence that will sustain the charge of kidnapping. The charge of kidnapping is not made out unless it is proven that the taking was against the will or consent of the person kidnapped. *People* v. *Flick* (1891), 89 Cal. 144, 26 Pac. 759; *Eberling* v. *State* (1893), 136 Ind. 117, 35 N. E. 1023. Therefore the verdict is not sustained by sufficient evidence and is contrary to law.

Judgment reversed, with instructions to the trial court to set aside the judgment rendered herein and to sustain appellant's motion for a new trial.