JOHNSON *v.* STATE OF INDIANA.

[No. 29,454. Filed April 12, 1957.]

510

*Robert Lee Brokenburr*, of Indianapolis, for appellant.

*Edwin K. Steers*, Attorney General, and *Owen S. Boling* and *Merl M. Wall*, Deputy Attorneys General, for appellee.

BOBBITT, J.—Appellant was indicted on two counts for the crime of murder in the first degree under Acts 1941, ch. 148, §1, p. 447, being §10-3401, Burns' 1956 Replacement; tried by jury and found guilty "as charged in Count One of the indictment"; and sentenced to the Indiana State Prison for life.

Count One of the indictment charged that appellant, on or about February 16, 1955, "unlawfully, feloniously, purposely and with premeditated malice, kill and

murder WILLIAM COVINGTON, a human being, by then and there unlawfully, feloniously, purposely and with premeditated malice shooting at and against the body of the said WILLIAM COVINGTON with a revolver loaded with metal bullets, then and there held in the hand of the said ROBERT LANGSFORD JOHNSON and did then and there and thereby inflict a mortal wound in and upon the body of the said WILLIAM COVINGTON, of which mortal wound the said WILLIAM COVINGTON then and there and thereby died."

The overruling of appellant's motion for a new trial is the sole error assigned.

Appellant presents here the second ground or specification for a new trial—that the verdict of the jury is not sustained by sufficient evidence, and more particularly asserts: (1) that there is not sufficient evidence to establish the venue in Marion County, Indiana; and (2) that there is not sufficient evidence to show beyond a reasonable doubt that decedent was killed by "shooting" as charged in Court One of the indictment.

*First:* Venue must be proven to sustain a conviction; *Strickland* v. *State* (1909), 171 Ind. 642, 645, 87 N. E. 12; however, no more direct or convincing evidence is required to establish it than is required to prove any other essential fact in the case. *State* v. *Jackson* (1918), 187 Ind. 694, 699, 121 N. E. 114.

There is direct evidence to show that the deceased lived and worked in Indianapolis, Indiana, that he was seen in the vicinity of 614 North California Street on the night of February 15, 1955, and that his dead body was found in the alley at the rear of 614 North California Street, Indianapolis, Marion County, Indiana, at about 7 o'clock on the morning of February 16, 1955. We believe this is sufficient evidence from which the jury might properly have

inferred that the alleged crime was committed in Marion County, Indiana. See: *Beavers* v. *The State* (1877), 58 Ind. 530, 536.

*Second:* Since appellant was found guilty "as charged in Count One of the indictment," the burden was upon the State to prove beyond a reasonable doubt every material allegation therein contained. *Abraham* v. *State* (1950), 228 Ind. 179, 184, 91 N. E. 2d 358.

Was there evidence sufficient to show that the deceased died as the result of gun-shot wounds? An examination of the evidence in the record pertaining to the cause of death discloses that Dr. James W. Anderson, a deputy coroner of Marion County, Indiana, and a witness for the State, testified as follows:

"Q. All right, now, what did you do, doctor, upon finding this body in the manner which you testified?

"A. He was covered up with a blanket. I removed the blanket and I did a preliminary examination to attempt to find out the cause of death.

· · · · ·

"Q. Now, doctor, will you describe what if any markings you found upon the body that you found there?

"A. There were multiple bruises and multiple lacerations of the scalp and head, and skull fractures; multiple fractures.

"Q. Any other marks in addition to the ones you testified about.

"A. No.

"Q. And what did you do then upon making this examination?

"A. After making the preliminary examination, I sent the body to the morgue for an autopsy.

"Q. Were you, from your examination, able to determine the cause of death?

"A. Not exactly, no.

Dr. Lawrence A. Lewis, a pathologist who performed an autopsy on the body of the deceased, testified on behalf of the State, on direct examination, as follows:

"Q. Now, Doctor Lewis, if you performed an autopsy on the man who is pictured in State's Exhibit Numbers Six and Seven, will you tell the court and jury in your own words, just what you did in that connection?

"A. The autopsy was performed on the body of a man approximately fifty-five years of age, about five feet, nine inches tall, and weighing approximately one hundred eighty-eight pounds. The body bore multiple evidences of external violence, most of which—

"A. I interpolate the term 'external violence' is purely a medical, surgical designation in character of the trauma which was exhibited by the body. No intention to infer how it happened, or anything of that sort. The entire vertex of the skull, which is the top of the skull, was bathed in blood, and disclosed on examination, nine separate and distinct lacerated wounds, varying in length and in conformation, but all of them comprehending all of the soft tissues of the scalp; and extending down to the bone of the skull, itself. The edges of these wounds were all peculiarly marked— in that they did exhibit minute serrations resembling tiny saw teeth, instead of being irregularly lacerated, and in three distinct areas of the scalp, this marking was continued back from the edges of the wound on to and into the superficial tissues of the scalp, itself, producing regularly spaced abrasions of the scalp. The entire cranium vault above what we call the base line had been reduced to a mass of comminuted bones, bones of variable shape and size; and in several areas these bones had been depressed and driven into the substance of the brain, itself. The resulting lacerations of the membranes which cover the brain had produced massive hemorrhages, which had coalesced, come together, as it were,

and enveloped both hemispheres of cerebrum, both sides of the upper brain. In addition to these wounds there was a disclosed—three circular wounds of the head and face, the characteristics of which proclaim them to be gunshot wounds produced by projectiles of lead caliber. . . . In the course of their passage through the skull, these projectiles had produced an extensive destruction of brain tissue and extensive intra-cranial hemorrhage. The cause of death as predicated upon the findings of this autopsy were massive intra-cranial hemorrhages; destruction of brain tissue, resulting first from multiple, compound, comminuted fractures of the vault and base, and second, from penetrating, perforating, multiple gun-shot wounds of the skull.

"Q. Doctor, when you say that each of the causes that you have mentioned as being one or two, would be such as would cause death to a human body?

"A. I would."

And, on cross-examination, as follows:

"Q. Doctor Lewis, do you know when the person whose pictures are in evidence as State's Exhibits 6 and 7, died?

"A. No, sir.

"Q. Do you know whether the bullets introduced in evidence in this trial as State's Exhibits Nine, Ten and Eleven entered the body of the person whose picture is shown as State's Exhibits Six and Seven, before or after death?

"A. I do not.

"Q. Doctor Lewis, do you know from the wounds you testified about were inflicted on that body, whether, (Picture of which is shown in State's Exhibits Six and Seven,) were inflicted before or after death?

"A. I do not."

State's Exhibits 6 and 7 were identified by Lilly Jackson, a daughter of the deceased and a witness for

the State, as photographs of her father, William Covington.

The foregoing is all the evidence that we have been able to find in the record relating in any manner to the cause of the death of the deceased herein.

Whether or not the victim died as a result of gunshot wounds is a material fact in this case, which the State must establish beyond reasonable doubt by some substantial evidence of probative value. As has been many times said: " 'This court cannot weigh evidence,' " but will examine it to " 'determine whether there is substantial evidence of probative value from which a jury could reasonably have inferred that appellant [the defendant] was guilty of the crime.' " *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641, 644, and cases there cited.

"It is not enough that evidence merely tends to support the conclusion of guilt; it must support it." *Baker* v. *State, supra.*

It is not enough "to sustain a conviction that the evidence, when given full faith and credit, may warrant a suspicion or amount to a scintilla." *Baker* v. *State, supra.*

The verdict of a jury may not be based upon mere suspicion, possibility, guess or conjecture. *Christen* v. *State* (1950), 228 Ind. 30, 39, 40, 89 N. E. 2d 445; *Todd* v. *State* (1951), 230 Ind. 85, 90, 101 N. E. 2d 922; *Durbin* v. *State* (1957), 236 Ind. 379, 140 N. E. 2d 510, 511.

The material allegations of Count One of the indictment herein must be established by substantial evidence or proper inferences drawn from such evidence. The verdict of the jury cannot rest upon conjecture, speculation or guess.

From the evidence in the record here, we are unable to see how the jury could have determined whether

the death of the deceased was caused solely "from multiple, compound, comminuted fractures of the vault and base," of the cranium, or "from penetrating, perforating, multiple gun-shot wounds of the skull," or from both.

There is no evidence as to when the victim died. Neither doctor was able to determine whether the victim was shot before or after death, nor did they know whether the trauma (external violence) about which they testified was inflicted before or after death.

It must be kept in mind here that the jury did not find appellant guilty by general verdict on both counts of the indictment, but found him guilty on only Count One.

Should the jury here be permitted to speculate or guess whether the victim was killed by beating or by gun-shot wounds? We think not. It seems to us from the evidence here that no prudent man could say by what single means the victim was killed.

In the absence of any other facts or supporting circumstances, the evidence in this case is not sufficient to sustain the material allegation of Count One of the indictment and, in our opinion, there is no evidence that the victim died solely of gun-shot wounds and no facts shown which justify any reasonable inference from which such fact might be established. There is no evidence to prove that the specific crime charged in Count One of the indictment was actually committed by anyone. Hence, the State has failed to sustain its burden of proof and the verdict is, therefore, contrary to law.

The trial court erred in overruling appellant's motion for a new trial.

Judgment reversed with instructions to sustain appellant's motion for a new trial.

Achor, C. J., Arterburn, Emmert and Landis, JJ., concur.

NOTE.—Reported in 141 N. E. 2d 444.