BINDER v. STATE OF INDIANA.

[No. 30,547. Filed December 21, 1966.]

*Robert L. Stephan,* and *Harry S. Taylor,* of South Bend, for appellants.

*John J. Dillon,* Attorney General, and *David S. Wedding,* Deputy Attorney General, for appellee.

ARTERBURN, C. J.—The defendant was charged with the crime of sodomy under Acts 1905, ch. 169, § 473, p. 584, being Burns' Ind. Stat. Anno. § 10-4221 (1956 Repl.), and following a jury trial was convicted and sentenced accordingly, from which judgment the defendant below and appellant herein appeals.

There is only one specification in the motion for a new trial presented by appellant's brief on appeal, namely, the overruling of appellant's motion for a psychiatric examination of the State's prosecuting witness, Susanna Lynne Eby, 15 years of age. This question has come before this Court previously and has been settled in *Wedmore* v. *State* (1957), 237 Ind. 212, 143 N. E. 2d 649. We stated that there is no statute in Indiana requiring the court to order a psychiatric examination of the witness and said:

"The prosecuting witness in this case being 17 years of age took the witness stand clothed with the presumption of competency and the burden of establishing the contrary was on the appellant—defendant."

In that case the motion for psychiatric examination was made at the beginning of the trial. It was an attack upon the competency of the witness.

In the case before us, no such motion was made until the conclusion of the State's case and after the witness in ques-

tion had testified fully and upon cross-examination. Appellant's motion was not timely filed and an objection as to the competency of a witness must be made before the witness is permitted to testify. The objecting party may not wait and hear the testimony and if the evidence is unfavorable, then object to the competency of the witness. *Morgan* v. *State* (1962), 243 Ind. 315, 185 N. E. 2d 15; *Wedmore* v. *State* (1957), 237 Ind. 212, 143 N. E. 2d 649.

On the issue of the right to a psychiatric examination in cases involving sex crimes, we have more recently reaffirmed our position taken in the *Wedmore case, supra,* by the opinion in *Lamar* v. *State* (1964), 245 Ind. 104, 195 N. E. 2d 98.

On the authority of the cases cited above, the judgment of the trial court is affirmed.

Myers and Rakestraw, JJ., concur. Jackson, J., dissents with opinion.

## DISSENT

JACKSON, J.—I dissent to the majority opinion.

Appellant was charged by indictment with the crime of sodomy under Acts 1905, ch. 169, § 473, p. 584, § 10-4221, Burns' 1956 Replacement.

The indictment, omitting formal parts, reads as follows:

"The Grand Jurors of the St. Joseph Circuit Court for the May Term, 1963, in and for the County of St. Joseph, State of Indiana, upon their oath do present:

"That on or about the 22nd day of January 1963, at and in the County of St. Joseph, State of Indiana, one JOE BINDER did then and there unlawfully, feloniously commit the abominable and detestable crime against nature with mankind or beast, to-wit: with one Susanna Lynne Eby, a female human being, being then and there of the age of fifteen (15) years, contrary to the form of Statute in such cases made and provided and against the peace and dignity of the State of Indiana."

Appellant tested the sufficiency of the indictment by motion to quash, reasons therefore being,

"1. That it does not state sufficient facts to constitute public offense.

"2. That it does not state the facts as to the said alleged public offense with sufficient certainty."

June 10, 1963, appellant's Motion to Quash was overruled. Thereafter, on September 10, 1963, appellant appeared in person and by counsel, waived arraignment and entered a plea of "not guilty" to the indictment. On September 16, 1963, appellant requested and obtained a change of venue from the county, the venue being changed from St. Joseph County to Marshall County.

Trial began on November 14, 1963, by jury in the Marshall Circuit Court. At the conclusion of the State's evidence on November 15, 1963, appellant filed his motion to require the prosecuting witness, Susanna Lynne Eby, to submit to a psychiatric examination, such motion, omitting formal parts and signatures, reads as follows:

"Comes now the defendant, Joseph Binder, by his attorneys, and moves the court to require the complaining witness, Susanne Lynn Eby, to submit to a psychiatric examination for the purpose of determining the following:

"(1) To verify her emotional stability; and

(2) To establish her capacity for truthfulness." The court promptly overruled appellant's motion.

Thereupon defendant introduced his evidence, the defendant not taking the stand. After deliberation the jury returned the following verdict:

"We, the Jury, find the defendant, Joseph Binder, guilty; and further find that he should be imprisoned as provided by law, and his age is 50 years."

On December 18, 1963, the following proceedings were had in said cause, reading as follows:

"Comes now the State of Indiana by Eugene N. Chipman, Prosecuting Attorney for the Marshall Circuit Court and Thomas Roemer, Prosecuting Attorney for the St. Joseph Circuit Court. Comes also the defendant in court in person and by counsel.

"The Jury having heretofore returned the verdict of Guilty in the above entitled cause, *and the Probation Officer having filed her pre-sentence report of investigation,* (emphasis supplied) and the defendant, having been asked in open court if he has any legal cause or reason to show why judgment should not be pronounced against him upon the verdict of the Jury, and no legal cause or reason being shown,

"IT IS NOW ORDERED AND ADJUDGED by the Court that Joseph Binder, sometimes known as Joe Binder, the said defendant, is guilty of Sodomy, as charged in the indictment; the court finds that the defendant is 63 years of age, and for the offense so committed, the defendant is now sentenced to the Indiana State Prison for a term of not less than two years nor more than fourteen years, and that he make his fine to the State of Indiana, in the sum of $1000.00, and the costs of this action.

"Sheriff is charged with execution of sentence.

"Argument on motion for New Trial Submitted. Motion for New Trial is now overruled."

Appellant's "Motion for New Trial" contained six (6) grounds, as follows:

"1. The trial Court erred overruling his Motion to Quash based on insufficiency of the allegations to constitute a public offense.

"2. The trial Court erred in overruling his Motion to Quash the indictment based on alleged uncertainity (sic) of the allegations.

"3. The trial Court erred in overruling his Motion that the Court appoint a psychiatrist to examine Susanne Lynn (sic) Eby, and to testify at the trial as to his findings from such examination.

"4. The trial Court erred in sending the jury back for further deliberation and stated in substance it was apparent that the jury had returned two verdicts; one finding him guilty of a misdemeanor charge, and the other finding him guilty of a felony charge.

"5. That the verdict is not sustained by sufficient evidence.

"6. That the verdict is contrary to law."

Appellant's "Assignment of Errors" reads as follows:

"Comes now the Appellant and shows to the Court that the trial Court committed manifest error in the trial of this cause in the following respects, to-wit:

"1. In overruling the Motion to Quash the indictment.
"2. In overruling the Motion for new trial."

The only witness produced by the State of Indiana was Susanna Lynne Eby. The only evidence adduced by the State came from this witness, consequently that is the evidence most favorable to the State and is set out in rather more detail than otherwise would be customary.

The witness testified that she was fifteen (15) years of age when she met appellant about 4:30 o'clock on the morning of January 20, 1963. That the meeting took place outside the Cadillac Lunch Restaurant where she worked as a part time waitress. That she was introduced to appellant by a friend, Red Felix. She told appellant she was nineteen years of age when they were introduced and he asked her to go home with him, which she did. She got into appellant's car with the owner of the restaurant, Mr. Felix, and Mr. Binder. The owner of the restaurant was let out at his home, and the others went to appellant's home on Lincolnway West in South Bend, arriving about 5:00 o'clock a.m. on January 20, 1963.

After arrival at appellant's home he asked her if she knew what a "call girl" was, she replied "yes," and he then asked her if she would work for him as one and she said "yes." She was then asked if she would do a "trick" with another man, who was present at appellant's home, and who was called Stanley. The word "trick" meaning in the words of the witness, "[i]t is a slang expression would we have intercourse (sexual) with them for pay." Her answer was "yes," and she and Stanley went into the bedroom in appellant's home where they had sexual intercourse for which Stanley paid

her $25.00, of which sum she gave appellant $12.50 keeping the remainder herself. After completing the trick with Stanley the witness went back to a place where she had been staying on St. Peter Street in South Bend, Indiana.

She returned to appellant's house at 1043 Lincolnway West again on the night of January 21st and "[t]hat night, I turned two of his tricks for Mr. Binder . . . I stayed there that night and all the next day and I was still there the next night." In the early morning of January 23rd, when she and appellant were in appellant's kitchen alone they had a conversation about which the witness testified as follows: "Mr. Binder was telling me some of the things that his call girls do." In response to a question by the State she replied "[h]e told me there was a thing called a French job and explained to me what it was, and he called himself a teacher and would teach me how to do this thing." The witness then testified to the commission of an act by herself and the appellant that would fall within the classification of the commission of the crime of sodomy.

The witness further testified that she continued to stay at appellant's home for approximately a week and a half during which time she slept in appellant's bed and had sexual relations with other men for which she was paid. That all told she worked for and stayed at Binder's home about three weeks, and during that time she divided her earnings with him. That during this time she had unnatural relations with Binder as she did on the first occasion on June 23, 1963. That for about a week during the three week period she was at appellant's she lived at 313½ North St. Peter Street in South Bend, Indiana, and when she left appellant's home she returned to the address on St. Peter Street.

On direct examination the witness testified that she was then a resident of the Indiana Girls' School and had been for about nine months. That her parents had been divorced about seven years, her mother had remarried and lived in South Bend, her father had not remarried, that at the time she

was sent to the girls' school she lived with a great aunt and uncle. That she had been placed in the Christian Women's Welfare Union Home at Anderson, Indiana, where she stayed until July 1962; she was placed in the Family and Childrens' Center in Mishawaka, Indiana, after she had run away and came back to South Bend. In October 1962, she was placed in the Juvenile Detention Home for about a week, and then sent back to her great aunt and uncle in South Bend where she lived until January 6, 1963, on which date she ran away from them.

On cross-examination the witness testified she first started to have sexual intercourse when she was 11½ years old, that at the time she met appellant she was living at the St. Peters Street address with one Roger Patterson, a negro, who lived in an apartment there, that she lived with him on two occasions of about one week each, that during the time they lived together they had sexual intercourse every night. The witness further testified that before she stayed at appellant's home she slept in the women's washroom at the South Bend Bus Station and in cars that came to the Bus Station. In response to questions about scars on her arms she testified that she had broken windows at the Girls' School which caused the scars. She also testified that she was and always had been highly nervous, that she had received medical treatment for that condition before and after her commitment to the Girls' School and was at that time being treated; she has two sisters and a step-brother, one sister had been a patient in the Norman Beatty Hospital in Westville and the brother was an inmate at the Indiana Reformatory.

The defense put three witnesses on the stand, Robert Henderson, John Felix and Alberta Looten. Robert Henderson testified that he was acquainted with the prosecuting witness and with her reputation for truth and veracity and also her reputation for moral character. That both were bad.

John Felix testified that he was present outside the Cadillac Restaurant and introduced the prosecuting witness to appel-

lant and accompanied them to appellant's home on January 20, 1963, as the prosecuting witness testified. Felix testified that he did not drink at Joe's (appellant's) that night and did not meet a man named Stanley there. He also testified that he knew what Susanna Lynne Eby's reputation for telling the truth was and that he knew her reputation for moral character and that both were very bad.

Miss Looten's testimony was to the effect that Miss Eby's face was familiar, that she may have seen her, and that she may have heard of her.

That concluded the evidence introduced on behalf of the defendant who then rested and the State also rested without rebutting or attempting to rebut the evidence of the defense.

The Attorney General in his argument points out that appellant has waived determination of his first assigned error, the overruling of the Motion to Quash the indictment, by failing to argue the same in his brief. Appellant, by implication at least, agrees by his failure to discuss that issue in his reply brief. Therefore, I will give that assignment no consideration in arriving at a determination herein.

The Attorney General comments in his brief that "[a]ppellant's narrative statement of the evidence is regarded as surplusage, as Appellant does not contest the sufficiency of the evidence in this appeal." That statement, together with his specification I page three of appellee's brief, is not as clear cut and determinate as appellee would have us believe.

The question posed by appellant is, "[s]hould the prosecuting witness, being a female minor, in a sex case, be required to submit to a psychiatric examination, where by the witness' own testimony there is evidence of mental or emotional instability on the part of such witness, and there has been a motion made by the defendant asking that such an examination be ordered by the Court?"

I think the question actually before the court in the case at bar is far greater and more important than in the form

propounded by the appellant. In the case at bar *appellant was convicted solely on the uncorroborated testimony of a minor prosecuting witness,* who by her testimony as shown by the record herein began a career of concupiscence at the tender age of 11½ years. That career has continued unabated until at least nine months prior to the date of trial. This witness has testified that she has a highly nervous condition that has existed as long as she can remember. She has been treated by private physicians, as well as physicians and a psychologist at the Girls' School. Such witness was receiving treatment at the time of trial. ("It is a liquid medicine and I usually receive fifty drams.") That during her stay at the Girls' School she received six marks against her; she ran away from her great aunt's home; ran away from the Christian Women's Welfare Union Home at Anderson, Indiana; she, by her own testimony, slept in the women's washroom at the South Bend Bus Station and for a week or more slept with men in cars that came to the Bus Station. That by her own testimony she is one who is immoral or amoral; and a person who bears a reputation for truth that is bad and who bears a "very bad" reputation for morality.

On the state of the record, as above delineated, we are asked to violate the general rule that conviction on the uncorroborated testimony of an accomplice cannot be affirmed. To do so when the accomplice is emotionally unstable, degenerate, vicious, subject to the influence of other people, or peculiarly subject to pressure by police or other officials, or is in a position where his or her testimony might be slanted for his or her own self interest, places a defendant in a position where he is peculiarly vulnerable to blackmail, oppression, disgrace and prison and is an open invitation to persecution rather than a legal prosecution for the commission of a criminal offense.

> ". . . Modern psychiatrists have amply studied the behavior of errant young girls and women coming before the courts in all sorts of cases. Their psychic complexes are multifarious, distorted partly by inherent defects, partly by

diseased derangements or abnormal instincts, partly by bad
social environment partly by temporary physiological or
emotional conditions. One form taken by these complexes
is that of contriving false charges of sexual offenses by men.
. . . .

". . . The facts are that there exist occasionally female
types of excessive or perverted sexuality, just as there are
such male types; and that these are often accompanied by a
testimonial plausibility which should not be taken at its
face value. Only an inquiry into the social and mental
history will reveal the degree of credibility. This inquiry
the law of Evidence ought to permit to the fullest extent,
rejecting the hindrance of rules that were framed without
an understanding of these facts." Wigmore on Evidence,
Vol. III, § 924a, pp. 459, 460.

I am aware that credibility of a witness is a question for
the trier of facts. But a group of laymen cannot make a
proper determination of the credibility of a witness such as
we have in this case without the assistance of psychiatric
testimony. Medical evidence as to the emotional stability and
truthfulness of the witness would be of inestimable value if
not absolutely necessary. As Wigmore on Evidence, *supra,*
has put it:

"*No judge should ever let a sex-offense charge go to the
jury unless the female complainant's social history and
mental makeup have been examined and testified to by a
qualified physician.*

"It is time that the Courts awakened to the sinister
possibilities of injustice that lurk in believing such a witness
without careful psychiatric scrutiny. . . ."

The appellee herein in the argument section of its brief has
made a rather specious argument and in so doing has failed to
make some distinctions between the facts and the law in the
cited cases and the facts and the law applicable in the case
at bar. For that reason most of appellee's argument is set
out verbatim as follows:

"Specification I. Appellant's argument is addressed solely
to the alleged erroneous overruling by the trial court of
Appellant's motion for a psychiatric examination of State's
witness, Susanna Lynn Eby.

"Appellant's authority is based entirely upon the case of *Burton* v. *State* (1953), 232 Ind. 246, 111 N. E. 2d 892.

"Appellee would point out that the *Burton* case, *supra,* with its incorporated acceptance of Dean Wigmore's views, is no longer the law in Indiana, as it was expressly overruled in *Wedmore* v. *State* (1957), 237 Ind. 212, 143 N. E. 2d 649.

"Furthermore, this Court just three (3) months ago in *Lamar* v. *State* (1964), 245 Ind. 104, 195 N. E. 2d 98, 99, 100, emphatically reaffirmed its position in *Wedmore* v. *State, supra,* by stating:

" 'Secondly, appellant asserts as error the fact that the trial court denied his petition to require Roger Sitcler to submit to a psychiatric examination by three qualified physicians, which asserted error was again raised during the course of the trial in the form of an objection to the admission of the testimony of the witness Roger Sitcler. In support of this petition, appellant asserted: (1) That the prosecuting witness was a minor, 15 years of age at the time of the trial; (2) that on numerous occasions he had changed his story with regard to the offense, and (3) *that he was the sole witness who testified to the offense, as charged.* Thus, from appellant's petition, objection, and argument, it is obvious that he is relying upon Burton v. State (1953), 232 Ind. 246, 111 N. E. 2d 892, with its attendant criteria as his authority for his right to require a psychiatric examination of the prosecuting witness.

" 'However, the Burton case, supra, is no longer authority on this proposition of law, relied upon by appellant, since it was expressly overruled in Wedmore v. State (1957), 237 Ind. 212, 221-222, 223-224, 143 N. E. 2d 649, 653-654.

In that case this court said:

" ' "There is no statute in Indiana making provision for a psychiatric examination of a prosecuting witness in any case. Cf. Chesterfield v. State, 1924, 194 Ind. 282, 294, 141 N. E. 632; Cosilito v. State, 1926, 197 Ind. 419, 424, 151 N. E. 129.

" ' "The question of stability and mental condition of the prosecuting witness herein concerned her competency and was a matter for the court to determine. Simpson v. State, 1869, 31 Ind. 90; . . .

" ' "The prosecuting witness was 17 [more than 10] years of age at the time of the trial and . . . she was a competent witness under the statute, and her credibility was a ques-

tion for the jury [trier of the facts]. Holmes v. The State, 1882, 88 Ind. 145, 147; Tyrrel v. State, 1912, 177 Ind. 14, 97 N. E. 14; Jacoby v. State, 1936, 210 Ind. 49, 199 N. E. 563; Thompson v. State, 1946, 224 Ind. 290, 66 N. E. 2d 597.

. . .

" ' "The prosecuting witness in this case being 17 years of age, took the witness stand clothed with the presumption of competency, and the burden of establishing the contrary was upon the defendant-appellant. 58 Am. Jur., Witnesses, § 210, p. 144. (Our emphasis)' "

"It should be further noted that Appellant's motion for psychiatric examination was not advanced until the Court had already had an opportunity to hear and view the witness. (Tr., pp. 76 and 77) Thus, by overruling the motion, the Court necessarily stated it was satisfied as to the competency of the witness.

"Appellee would also point out that Appellant's motion was not timely filed. If appellant objected to Miss Eby's competency, he should have made the proper objection before the witness testified. By failing to make a seasonable objection, Miss Eby took the witness stand clothed with the presumption of competency. Hence, Appellant waived any question concerning her competency. See: *Morgan* v. *State* (1962), 243 Ind. 315, 185 N. E. 2d 15; *Wedmore* v. *State* (1957), 237 Ind. 212, 143 N. E. 2d 649.

"In conclusion, Appellee contends Appellant's argument is without merit since, (1) there is no statutory authority for psychiatric examinations in any case; (2) Appellant's motion was made after the Court had heard and viewed the witness; (3) Appellant failed to make a timely objection to the witness's competency."

With reference to this Court's holding in *Wedmore* v. *State* (1957), 237 Ind. 212, 143 N. E. 2d 649, the defendant there did not file a motion requesting that the prosecuting witness be required to submit to a psychiatric examination. That fact was heavily relied upon by this court in deciding that case as is evidenced by its statement in 237 Ind. 212, 223, viz:

"In this case if timely objection to the competency of the prosecuting witness had been made, it would have been the duty of the court to make such an examination as would satisfy it as to her competency or incompetency. 58 Am. Jur., Witnesses, § 134, p. 101; and § 211, p. 144."

Again referring to the *Wedmore* case, *supra,* at page 224 this court made the following observation,

"If the court, within its sound discretion, on request of the defendant-appellant herein, had ordered such an examination appellant would thereby have waived the right to object to the report of the examining physician if it was adverse to him, and at the same time he would have been given all the protection against fantasy and fabrication on the part of the prosecuting witness as proposed by Professor Wigmore. . . ."

In the case of *Lamar* v. *State* (1964), 245 Ind. 104, 195 N. E. 2d 98, the writer of this opinion dissented. One of the distinguishing features of that case was that the prosecuting witness was a boy and no evidence of his reputation for truth and veracity or morals was adduced, secondly the trial judge purported to rule specifically on the competency of the prosecuting witness in the *Lamar* case, and in the case at bar the court did not so rule. The appellee intimates that the trial court, by inference, passed on the competency of the prosecuting witness by its denial of the defendant-appellant's motion for psychiatric examination of the prosecuting witness. With that contention we do not agree on two counts, first in criminal cases all inferences are in favor of the innocence of the defendant; and second, if that inference (i.e. that the trial court in the case at bar passed on the competency of the witness Eby) be seriously contended for and this court determined the trial court has so held, the trial court then committed reversible error by its abuse of discretion when the emotional imbalance of the prosecuting witness was proved and the State did not even attempt to rebut or even refute that evidence.

The question of the timeliness of the motion, to require the prosecuting witness to submit to the psychiatric examination, must be decided adversely to the appellee and in favor of the appellant. The motion was made at the conclusion of the evidence of the prosecuting witness, whose answer to the last

question propounded to her was that she had seen a psychiatrist since she had been in the Girls' School.

Also, the court sua sponte has a duty to see that justice is done and we are forcibly struck by the fact that the only evidence in the record as to the age of the appellant was that he was 50 years of age and the jury so found by its verdict. Yet, when the court imposes sentence, after the filing of the pre-sentence investigation by the lady probation officer, "the court finds that the defendant is 63 years of age," the court also imposed the maximum fine allowable under the statute.

Are we to assume that the probation officer's report contained some statement as to the age of appellant? If so are we to assume that the court adopted that age from the report instead of the jury's verdict? If we assume the first or either of these premises, the question then arises as to what else was in the probation officer's report that the court considered, and whether or not that caused the judge to impose the maximum instead of a lesser fine; and finally does not the consideration of such report deprive appellant of the right to meet his accuser face to face, and result in a denial of his constitutional rights? This Court takes judicial knowledge of the fact that a few of the trial judges in the State have quite frankly told the court they pay more attention to the reports of their probation officers than to the evidence. Volume 52, Number 12, page 1120 of the American Bar Association Journal for December 1966, contains a thought provoking paragraph reading as follows, to-wit:

> "Unfortunately, trial courts have a secrecy syndrome regarding the presentence report. The undisclosed presentence report is star chamber practice with a vengeance. This report, which may substantially affect the liberty of the accused, often contains rumors and gossip gathered from an ex-wife, a jilted girl friend, and unhappy neighbor or other enemy of the accused. The charge in the report and the person making the charge are not disclosed to the accused or to his counsel. At least in the Star Chamber the charge was known. Moreover, many courts use retired

policemen as probation officers; this practice is hardly calculated to advance the social considerations involved in the imposition of sentence."

Finally in examining the sufficiency of the evidence to sustain a criminal conviction, the Supreme Court has the duty, as a matter of law, to decide whether the evidence is sufficient to cause reasonable men to believe that the defendant is guilty beyond a reasonable doubt. In resolving this question the reviewing court can pass on the credibility of the testimony to the extent of determining whether it meets this test. *Riggs* v. *State* (1958), 237 Ind. 629, 632, 147 N. E. 2d 579; *Johnson* v. *State* (1957), 236 Ind. 509, 515, 141 N. E. 2d 444; *Thompson* v. *State* (1939), 215 Ind. 129, 137, 19 N. E. 2d 165; *Eberling* v. *State* (1894), 136 Ind. 117, 121, 35 N. E. 1023; *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641.

It appearing that the evidence fails to meet the criteria established by the above cases and that the court committed reversible error in denying appellant's Motion for New Trial, this cause should be reversed and remanded with instructions to grant the appellant's Motion for New Trial.

NOTE.—Reported in 221 N. E. 2d 886.