MITCHELL BRYANT *v.* STATE OF INDIANA.

[No. 1170S264. Filed July 9, 1971. Rehearing denied October 6, 1971.]

*Russel White, Albert W. Ewbank,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Assistant Attorney General, *M. Daniel Friedland,* of counsel, of Indianapolis, for appellee.

GIVAN, J.—Appellant was charged by indictment in two counts, one of rape and the other of incest. Trial by court resulted in a finding of guilty on both charges. The court then sentenced the appellant to the Indiana State Prison for a term of two to twenty-one years on Count 1 and for a like term on Count 2.

The record discloses the following facts:

The prosecuting witness was the fifteen year old stepdaughter of the appellant. She testified that she first had sexual intercourse with the appellant when she was nine years old, and that this activity had continued from time to time until she was fourteen years of age at which time she made a complaint to her aunt, who in turn informed the girl's mother, who made the initial complaint to the prosecuting attorney, which complaint ultimately led to the indictment under which the appellant now stands convicted.

Appellant first claims error in the trial court in that when he arrived for trial on the date previously set by the regular judge, The Honorable John T. Davis, he for the first time discovered that the regular judge was not present and that a judge pro tempore, The Honorable Robert J. Fink, had been appointed to act as judge of the criminal court for that day. Under Burns Ind. Stat., 1968 Repl., § 4-5711, a judge pro tempore appointed by the regular judge has the

same power and authority during the continuance of his appointment as the regularly elected judge of the court.

At a prior hearing before the regular judge, The Honorable John T. Davis, the appellant had requested a continuance after having had several prior continuances. At that hearing his request for continuance was granted on the condition stated by the regular judge that there would be no further continuances. However, when faced with the presence of the judge pro tempore, the appellant made a motion for a further continuance, which motion was denied. We hold that under the circumstances this motion was properly denied. Under the statute the judge pro tempore had the right and the duty to perform as the regular judge. There was no showing in the motion for continuance of any cause for the same with the exception of the presence of the judge pro tempore instead of the regular judge. We hold that this in and of itself was not sufficient cause to now hold that the refusal of the continuance was reversible error.

Following the overruling of his motion for continuance, the appellant filed a motion for change of judge, the body of which motion reads as follows:

"Comes now the defendant, by counsel, Russel White, and respectfully requests a change of judge from The Honorable Robert Fink."

This motion does not comply with the Indiana Rules of Procedure CR. 12, which provides that where the applicant first obtains knowledge of a cause for change of judge after the time specified in the ruling, his application for change must be verified by the party himself and specifically allege when the cause was first discovered, how it was discovered and the facts showing the cause for a change. This the appellant did not do. We, therefore, hold that he failed to file a proper motion for change of judge under the rule. Therefore, the trial court did not err in refusing the change of judge.

The appellant next claims he did not receive a fair trial because during the course of her testimony the prosecuting witness stated that she did not want to testify; whereupon, she was admonished by the trial court that she must answer the questions propounded by the prosecuting attorney or be subject to contempt of court. When the witness persisted in refusing to answer questions, the court found her in contempt and sentenced her to the Juvenile Center for three months and fined her $500 and costs. Following the imposition of this sentence, the witness was again called to the witness stand, whereupon she again stated she did not want to testify but that she would. Whereupon she continued her testimony concerning the sexual relations between her and the appellant. Following her testimony, the court set aside the finding of contempt and the sentence imposed upon the witness. Appellant claims this action on the part of the trial court constituted duress of the witness in violation of her constitutional right against self-incrimination, and that her testimony so extracted was not of such credibility as to support a finding of guilty beyond reasonable doubt of the crime charged. We would first observe that if the witness did in fact have a right to refuse to testify on the ground that it might incriminate her, this right was personal to her and is not available to the appellant either in the trial court or in this Court on appeal. See 58 Am. Jur., *Witnesses,* §§ 48-49, p. 52.

We do not agree with the appellant that the trial court's forcing of the witness to answer the questions of the prosecutor rendered the answers to those questions unbelievable. In this case the mother of the prosecuting witness had been the initial complainant to the prosecuting attorney's office, yet had taken the witness stand on behalf of the appellant and testified that the prosecuting witness had been guilty of sexual promiscuity for which she and the appellant had punished the witness, and that she knew of no acts of intercourse between the appellant and the witness. There was ample evidence before the trial court from which he could determine that the

pressures on the prosecuting witness to refrain from testifying against the appellant were great, and that her reluctance to testify stemmed from these pressures being exerted by members of her family and did not necessarily relate to the truth or falsity of the accusations. The record discloses that at no time did the trial judge indicate or imply to the witness that she must testify in a certain manner. His sole admonition to her was that she answer the questions of the prosecuting attorney; in this framework of facts, after stating reluctance to testify, the witness did in fact testify against the appellant. We would also observe that at the very beginning of this witness' testimony before she ever stated a reluctance to testify and before any threats whatever of contempt from the trial judge, she stated that she had had sexual intercourse with the appellant.

The appellant also states the trial judge had no jurisdiction to punish the prosecuting witness for contempt, and that the only jurisdiction he had was to turn the witness over to Juvenile Court for assessment of punishment for the contempt. With this we do not agree. To so hold would greatly dilute the inherent power of a trial court to preside over the business of that court in a speedy and efficient manner. See *In Re Williams* (D.D.C. 1969), 306 F. Supp. 617; *In Re Balucan* (1960), 44 Hawaii 271, 353 P. 2d 631; *Young* v. *Knight* (Ky. Ct. App. 1959), 329 S. W. 2d 195. We hold that the statute giving Juvenile Court exclusive jurisdiction over juveniles does not apply to a case of direct contempt in another court, and that the court in which the contempt occurs has full power to punish the juvenile as it would any other person under the laws governing direct contempt of court. We, therefore, hold the trial court did not err in requiring the witness under penalty of contempt to answer the questions of the prosecuting attorney and that such coercion of the witness on the part of the trial court did not deprive the appellant of a fair trial.

The appellant next claims the trial court erred in not

requiring that the prosecuting witness undergo a psychiatric examination even though none was requested by the appellant. This Court has previously held that it was not necessary for a trial court on its own motion to order a psychiatric examination of a prosecuting witness and that such failure was not reversible error. *DeBruler* v. *State* (1965), 247 Ind. 1, 210 N. E. 2d 666, 6 Ind. Dec. 559.

Appellant also claims there is insufficient evidence to support his conviction. We have repeatedly stated that a conviction of rape may be sustained solely on the testimony of the prosecuting witness who was the victim. *Grimm* v. *State* (1970), 254 Ind. 150, 258 N. E. 2d 407, 21 Ind. Dec. 349. The same is equally true of incest. *Woods* v. *State* (1968), 250 Ind. 132, 235 N. E. 2d 479, 13 Ind. Dec. 610. The *Grimm* case further stated that this Court will not weigh the evidence nor determine the credibility of the witnesses. We find no reversible error in this case.

The trial court is, therefore, affirmed.

Arterburn, C.J., and DeBruler, J., concur; Hunter, J., dissents with opinion in which Prentice, J., concurs.

### DISSENTING OPINION

HUNTER, J.—" 'Lord Hale once aptly observed that an accusation of rape [or other sexual offense] is easily made, hard to be proved and still harder to be defended by one ever so innocent.' " (citations omitted) *Burton* v. *State* (1953), 232 Ind. 246, 250, 111 N. E. 2d 892, 893.

With full awareness that such is the specter of truth, reviewing courts are most careful to examine the sufficiency of the evidence in such cases. *People* v. *Kazmierczyk* (1934), 357 Ill. 592, 192 N. E. 657. And, we reverse if the evidence was not as a matter of law sufficient to remove all reasonable doubt of the accused's innocence. *Burton* v. *State, supra.*

In view of the interpretation which I give to this standard I find upon careful review of the majority opinion that I must respectfully dissent therefrom. The basis for my disagreement

with the holding involves the lack of a psychiatric examination of the prosecuting witness. As this court has previously held by a divided opinion in *Burton* v. *State, supra,* certain fact situations which arise in sexual offense prosecutions by their very nature call for a psychiatric examination before a conviction may as a matter of law be sustained. It is true that

"This Court subsequently ruled in *Wedmore* v. *State* (1957), 237 Ind. 212, 143 N. E. 2d 649, that the Court had no legal authority for establishing such a specific medical examination as a means of proof. However, it was the psychiatric examination which was overruled and not the Court's concern for the problem of sufficiency . . ." *Meadows* v. *State* (1968), 252 Ind. 1, 5, 238 N. E. 2d 281, 282.

of the evidence to sustain a conviction in sex offense cases where the *only* incriminating evidence is the testimony of the prosecuting witness.

In *Burton* and in his *Wedmore* dissent Judge Emmert wrote brilliantly in expostulating a proper standard of proof in such prosecutions. There is little more that I might do in etching the need for re-examination of our practice in dealing with the possibility of psuedologia phantasticia. It is now clearly recognized that this condition, a sort of mixture of fabrication with mental aberration, is a very real possibility in literally *all* sex offense cases where there is no corroborating evidence of the offense.

"Modern psychiatrists have amply studied the behavior of errant young girls and women coming before the courts in all sorts of cases. Their psychic complexes are multifarious, distorted partly by inherent defects, partly by diseased derangements or abnormal instincts, partly by bad social environment, partly by temporary physiological or emotional conditions. One form taken by these complexes is that of contriving false charges of sexual offences by men. The unchaste (let us call it) mentality finds incidental but direct expression in the narration of imaginary sex-incidents of which the narrator is the heroine or the victim. On the surface the narration is straight forward and convincing. The real victim, however, too often in such cases is the innocent man; for the respect and sympathy naturally felt by any

tribunal for a wronged female helps to give easy credit to such a plausible tale." 3 Wigmore, Evidence, § 924a (3rd Ed.).

Even after *Wedmore* this Court has seen fit to make careful circumspection of uncorroborated testimony of prosecuting witnesses in sex offense cases. For example, in *Easterday* v. *State* (1970), 254 Ind. 13, 256 N. E. 2d 901, we reversed a sodomy conviction on the basis that a defendant's request for a psychiatric examination of the prosecutrix was refused where she had made similar accusations against other men and admitted telling "stories". As was stated in *Easterday*

"As recognized by the *Wedmore* court, competency is a question for the trial court and it could, within its sound discretion, order a psychiatric examination upon the request of the defendant. No such request was made in that case. It would appear that *the Burton rationale was left intact, however,* and that a conviction could be reversed where the uncorroborated evidence of the prosecutrix, under the facts and circumstances of the case, was insufficient to support a verdict. *Wedmore* merely frees the court from any affirmative duty of determining competency by way of a psychiatric examination." 254 Ind. at 16, 256 N. E. 2d at 902 (our emphasis).

The emphasis thus rested upon the duty of the trial court to determine competency, that is to be assured that the witness is capable of realizing what is fact and what is the fancy of a mind somehow less equipped than usual to deal with the sexual elements of life. If the witness whose remarks compose the entire proof of the crime is not capable of relating the truth, having so combined it with illusion as to render one inseparable from the other, the evidence must per se be insufficient to support a conviction. While ". . . competency is a question for the trial court . . .", there must be judicial recognition by this court that there exist certain subtleties of the mind too intricate for any but the trained intellect to fathom.

"In light of the manifest possibilities for injustice it seems only reasonable that a trial judge take advantage

of the knowledge and expertise of those more qualified to speak on the question of competency:

'It is a further fact that in some of these cases [alleged sex offenses] the personality disturbance which lies at the basis of the accusation would not be discernible to laymen, but that the psychiatrist can in many cases give a definite opinion as to the witness' mental state after he has made an examination.' Overholser, The Psychiatrist and the Law 54 (1953)." *Easterday* v. *State, supra,* 254 Ind. at 21, 256 N. E. 2d at 905.

The question then becomes one of when and under what circumstances an examination is warranted. No less a legal authority than Judge Fuld of New York judiciary has expressed the view that

". . . as a matter of law, *no* conviction for impairing the morals of a child may validly rest on the uncorroborated testimony of the child victim." *People* v. *Porcaro* (1959), 6 N. Y. 2d 248, 252, 160 N. E. 2d 488, 490 (concurring opinion) (our emphasis).

Judge Fuld cites Wigmore, § 924a as expressive of the reasons why this must in justice be found to be the law. While I personally would adopt the Wigmore-Fuld approach in its entirety, this court need not go so far. Indeed we have already begun our journey. By our holdings that a judge may abuse his discretion in refusing an examination where a defendant requests one we have acknowledged the advantages to justice to be gained in certain cases from the application of specialized knowledge. Indeed it is impossible that we deny such advantage. The case before us, however, does not fit the mold of those situations in which the refusal of a psychiatric examination has been found grounds for a reversal. See *Easterday* v. *State, supra.* See also, *Wedmore* v. *State, supra; Binder* v. *State* (1966), 248 Ind. 30, 221 N. E. 2d 886. Lacking here is a request by the defendant that an examination be made. But, that element is not material in cases such as that now before us. The question is one of sufficiency of the evidence—did the state produce that quantum of proof necessary to sustain the

finding of guilt. This is a question of law. It requires no citation that the defendant has no burden to prove his innocence; he is presumed to be innocent until his guilt is established. As stated in the dissent to *Binder* v. *State, supra,*

".... [I]n examining the sufficiency of the evidence to sustain a criminal conviction, the Supreme Court has the duty, as a matter of law, to decide whether the evidence is sufficient to cause reasonable men to believe that the defendant is guilty beyond a reasonable doubt. In resolving this question the reviewing court can pass on the credibility of the testimony to the extent of determining whether it meets this test. *Riggs* v. *State* (1958), 237 Ind. 629, 632, 147 N. E. 2d 579; *Johnson* v. *State* (1957), 236 Ind. 509, 515, 141 N. E. 2d 444; *Thompson* v. *State* (1939), 215 Ind. 129, 137, 19 N. E. 2d 165; *Eberling* v. *State* (1894), 136 Ind. 117, 121, 35 N. E. 1023; *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d. 641." 248 Ind. at 45, 221 N. E. 2d at 894-895.

A feature of credibility certainly must be the question of the very existence of the *capacity* to relate evidence of probative value. I would therefore hold that there exist certain sets of circumstances so suggestive of the possibility that mental defect exists as to demand a psychiatric examination of a prosecuting witness in a sexual offense case. Of greatest importance in making such a determination is the fact that the witness' story is otherwise uncorroborated. Further credence could well be placed on a past history of abnormal sexual activity or mental instability. When ample signs are present to bring a witness' testimony into question a sufficiency of the evidence problem exists that, in the absence of a proper examination to dispel doubt, mandates a reversal by this court.

Applying this view to the case at bar I find a clear case for the granting of a reversal. Appellant has raised the question of the state's failure to meet its burden of proof in his motion to correct errors. He asserts that, *in view of the facts of this case,* a psychiatric examination was necessary before the state can be held to have sustained its burden of proof. The facts demonstrated by the record in this case that call for such a conclusion are:

(1) The *only* incriminating evidence was that supplied by the prosecuting witness.

(2) The prosecuting witness was shown by testimony of her own mother to have indulged in unusual sexual activity.

(3) Evidence was introduced that the prosecuting witness had been guilty of lying on past occasions.

(4) The prosecuting witness expressed a deep seated reluctance to testify which, coupled with the other factors present here, suggest the entire episode may have been a fabrication.

(5) There was evidence that appellant had been called upon to punish the prosecuting witness for her errant behavior thus raising the possibility of revenge as a motive for the fabrication of a "story".

I therefore would suggest that

"With such a record before us we fail to find any evidence that would convince us beyond a reasonable doubt of the appellant's guilt. Many times this court has laid down the test for reasonable doubt by requiring that the facts must have such a convincing force that the jurors [or court as the finder of fact] would be willing to act upon them in matters of the highest importance, affecting their dearest interests, under circumstances where there would be no compulsion to act at all. Guilt is not established by mere opportunity to commit crime, nor can a conviction be sustained on speculation or conjecture. If the trier of the facts in this case had properly applied the test for determining proof beyond a reasonable doubt, he could not properly have found the appellant guilty as charged. For these reasons we believe the finding of the trial court was not sustained by sufficient evidence." *Burton* v. *State, supra,* 232 Ind. at 255, 111 N. E. 2d at 896.

Because, being uncorroborated and otherwise brought into serious question,

"Under the circumstances of this case, to uphold the conviction would be a return to the ancient *wager of law,* a consequence not to be desired. We must conclude that . . . the evidence is not 'substantial and probative' and does not meet this State's minimal standards of persuasion. The interests of justice must reach at least this far in an appellate court." *Meadows* v. *State, supra,* 252 Ind. at 64, 238 N. E. 2d at 283.

For the foregoing reasons, therefore, I respectfully dissent and vote to reverse.

Prentice, J., concurs.

NOTE.—Reported in 271 N. E. 2d 127.