## EASTERDAY *v.* STATE OF INDIANA.

[No. 369S62. Filed April 14, 1970. No petition for rehearing filed.]

R. D. Reading, of Wabash, for appellant.

Theodore L. Sendak, Attorney General and Aaron T. Jahr, Deputy Attorney General, for appellee.

HUNTER, C.J.—Appellant was charged by affidavit in the Wabash Circuit Court on two counts of the offense of sodomy. Upon a plea of not guilty, trial was had by jury and a verdict of guilty was returned. Appellant was sentenced to the Indiana Reformatory for a term of not less than two (2) nor more than fourteen (14) years.

On this appeal, the sole assignment of error is that the trial court erroneously overruled appellant's motion for new trial. Because of the result reached by this court, it will be necessary to discuss only two issues raised by that motion, namely whether the trial court erred in overruling appellant's motion to require the prosecutrix to submit to a psychiatric examination, and whether appellant has a constitutional right to be tried for an infamous crime only on grand jury indictment.

Due to the nature of the facts in this case, we will refrain from reciting the evidence except insofar as is absolutely necessary to substantiate our holding. Suffice it to say that appellant was convicted of the charge against him on the uncorroborated testimony of a ten year old child. Prior to the swearing of the jury, appellant filed his motion to require the prosecutrix to submit to a psychiatric examination. No action was taken on the motion by the trial court apparently until a

good portion of the child's testimony had been admitted. At that time it was overruled.

This court, in the case of *Burton* v. *State* (1953), 232 Ind. 246, 111 N. E. 2d 892, indicated the importance of allowing for a psychiatric examination of the prosecutrix in cases involving sex offenses. Several factors are present which clearly demonstrate the need for such an examination. See generally, 3 Wigmore, Evidence § 924(a) (3rd Ed. 1940); Report, A. B. A. Committee on the Improvement of the Law of Evidence (1937-1938); Juviler, Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach (1960), 48 Cal. L. Rev. 648; Note, 44 Ind. L. J. 106 (1968).

In the *Burton* case, the defendant had been charged with sodomy and was convicted on the uncorroborated testimony of a 10 year old girl. This court, in reversing, held that it could not place itself in the position of the trial judge in determining credibility of the witnesses or the weight of the evidence, yet it must determine whether there was sufficient evidence to uphold the verdict. The clear implication was that some convictions, standing only on the uncorroborated evidence of the prosecutrix, would not be upheld unless the prosecutrix first be subjected to a psychiatric examination.

The *Burton* case was overruled insofar as it purported to *require* any complaining witness to be examined for the purpose of ascertaining her competency before testifying by the case of *Wedmore* v. *State* (1957), 237 Ind. 212, 143 N. E. 2d 649:

> "There is no statute in Indiana making provision for a psychiatric examination of a prosecuting witness in any case (citations omitted).
> The question of stability and mental condition of the prosecuting witness herein concerned her competency and was a matter for the [trial] court to determine
> . . .
> If the [trial] court, within its sound discretion, on request of the defendant-appellant herein, had ordered such an examination appellant would thereby have waived the

right to object to the report of the examining physician if it was adverse to him, and at the same time he would have been given all the protection against fantasy and fabrication on the part of the prosecuting witness . . . " 237 Ind. at 221-224, 143 N. E. 2d 653-655.

As recognized by the *Wedmore* court, competency is a question for the trial court and it could, within its sound discretion, order a psychiatric examination upon the request of the defendant. No such request was made in that case. It would appear that the *Burton* rationale was left intact, however, and that a conviction could be reversed where the uncorroborated evidence of the prosecutrix, under the facts and circumstances of the case, was insufficient to support a verdict. *Wedmore* merely frees the court from any affirmative duty of determining competency by way of a psychiatric examination.

In the case of *Lamar* v. *State* (1964), 245 Ind. 104, 195 N. E. 2d 98, this court held that the trial court's refusal to appoint a psychiatrist for the purpose of examining the prosecuting witness was not error where the court had specifically noted the demeanor and testimony of the witness and concluded that no examination was necessary. Clearly the *Lamar* case restated the principle set forth in *Wedmore,* namely that it is not mandatory upon the trial court to order the examination, but discretionary.

Finally, the case of *Binder* v. *State* (1966), 248 Ind. 30, 221 N. E. 2d 886, added a qualification to the holding in *Wedmore* by stating that any request for a psychiatric examination, to be considered, must be made before the prosecutrix' testimony is in the record. As was there held, defendant cannot wait and hear the evidence to determine whether it is favorable or unfavorable before objecting to the competency of the witness.

From the above cited cases, it is apparent that the defendant has no right to subject a prosecuting witness, in a trial

on a sex offense, to a psychiatric examination. The trial court can, however, on timely motion of the defendant, order such an examination where in its sound discretion it determines one to be necessary.

Looking to the case at bar, we note several factors which indicate the necessity of an examination, all of which were apparent from appellant's motion for psychiatric examination or would have become apparent to the trial judge had he conducted a hearing on the prosecutrix's competency prior to allowing her to testify. To begin with, the prosecutrix, at the time of trial, was just two weeks past her tenth birthday. Ind. Ann. Stat. § 9-1603 (1956 Repl.) by virtue of Ind. Ann. Stat. § 2-1714 (1968 Repl.), makes any child under ten years of age incompetent to testify at a criminal prosecution unless it appears that he understands the nature and obligation of an oath. Although the prosecutrix here was ten years old and beyond the statutory age limitation, her borderline age should certainly have weighed heavily in the trial judge's mind when passing on her competency to testify at this type of trial.

Coupled with the above is the fact that the prosecutrix had implicated other men in acts of sexual misconduct, a fact brought to the attention of the trial judge by appellant's motion. In addition to appellant, the prosecutrix claimed that her brothers and an uncle had molested her. In fact, from the evidence adduced at trial, it appears that one of her brothers was at that time serving a prison sentence for such misconduct.

Further, evidence clearly shows that the prosecutrix admitted telling "stories" some of which directly related to the type of activity for which appellant is on trial. On cross examination, the prosecutrix testified:

"Q. Other than the persons that you have indicated here today, did any other man ever make any improper advances on you, ever do bad things or try to make you do bad things?

A. What do you mean—besides Don?

Q. And your brothers?
A. No.

Q. Did you ever say that anyone did?
A. Uncle did it?

Q. That your uncle did when he was visiting you?
A. What do you mean?

Q. You had an uncle who visited you when you were at home, did you not?
A. Yes.

Q. Didn't you say that he did bad things or tried to do bad things?
A. Yes, I take that back. He did try.

Q. Oh, he tried too. Did anyone ever make you say bad things or tell about bad things?
A. No, nobody ever told me.

Q. Did you ever say that the principal at Lincolnville school made you get up and tell the class what happened with your brothers?
A. What did you say?

Q. Did you ever say that the principal at the school that you attended when you were living in Lincolnville made you get up before your class and tell what had happened with your brothers?
A. Yes.

Q. Did he?
A. No.

Q. Why did you say it?
A. I don't know.

On re-cross, it was further testified

"Q. So you don't remember if anything had gone wrong in school that day that you came home and told the story about the principal?
A. No.

Q. Don't you have some idea why you told this?
A. No.

Q. Do you sometimes tell stories like that?
A. Not now.

Q. Did you then?
A. Yes.
Q. Very often?
A. Not very often.
Q. Did you sometimes get caught?
A. Yes.
Q. What happened when you got caught? Do you remember what happened when you got caught?
A. No.
Q. Did you ever tell a story like that at school?
A. I don't think I ever told a story in school.
Q. Where did you tell stories?
A. Mostly when I went home.
Q. Sometimes you told stories about people if you were mad at them, didn't you?
A. Yes.
Q. That was a way of getting back at them, wasn't it, because they were bigger and you couldn't fight them so you would tell stories about them, is that right?
A. Sometimes whether they were bigger than me or not, I would just tell it.
Q. But sometimes you told stories about them to get back at them, didn't you, when you were mad at them?
A. Yes.
Q. And the stories you told, you told when you were mad at someone, wouldn't you?
A. Yes."

Again, had the trial judge conducted a hearing prior to allowing the prosecutrix to testify, her propensity to tell "stories" might well have been made apparent.

Finally, it must be presumed that the trial judge was aware of the opinion held by various legal scholars on the subject of competency when it relates to a female witness testifying at a trial of a sex offense:

"No judge should ever let a sex-offense charge go to the jury unless the female complainant's social history and mental makeup have been examined and testified to by a

qualified physician." 3 Wigmore, Evidence § 924 (a) (3rd Ed. 1940)

"Today it is *unanimously* held, (and we say 'unanimously' advisedly) by experienced psychiatrists that the complainant woman in a sex offense should *always* be examined by competent experts to ascertain whether she suffers from some mental or moral delusion or tendency, frequently found especially in young girls, causing distortion of the imagination in sex cases." Report, A. B. A. Committee on the Improvement of the Law of Evidence (1937-38) (our emphasis).

It may be true, as was stated in the *Wedmore* case that the prosecuting witness takes the witness stand clothed with a presumption of competency. It may also be true as was there stated that the question of the stability and mental condition of the prosecuting witness is a matter for the court to determine. To hold, however, that in *no* cases would there ever be a *requirement* to order such a psychiatric examination would be to make the presumption of competency conclusive and talk of a trial court's duty to determine such competency mere rhetoric.

If indeed the trial judge must pass on the competency of a witness, and we are to take seriously the caveats of the various psychiatrists and legal scholars as to the nature of a female witness in such a case, how is the trial judge to make his determination? Would a lay-person, not versed in the subtleties of the human psychic be able to ascertain a deviant personality? The dangers inherent in glibly allowing a prosecuting witness to testify have been amply documented:

"There is, however, at least one situation in which chastity may have a direct connection with veracity, viz. when a woman or young girl testifies as complainant against a man charged with a sexual crime,—rape, rape under age, seduction, assault. Modern psychiatrists have amply studied the behavior of errant young girls and women coming before the courts in all sorts of cases. Their psychic complexes are multifarious, distorted partly by inherent defects, partly by diseased derangements or abnormal instincts, partly by bad social environment, partly by temporary physiological or

emotional conditions. One form taken by these complexes is that of contriving false charges of sexual offenses by men. The unchaste (let us call it) mentality finds incidental but direct expression in the narration of imaginary sex-incidents of which the narrator is the heroine or the victim. On the surface the narration is straight-forward and convincing. The real victim, however, too often in such cases is the innocent men; for the respect and sympathy naturally felt by any tribunal for a wronged female helps to give easy credit to such a plausible tale." 3 Wigmore, Evidence § 924 (a) (3rd Ed. 1940)

"The most dangerous witnesses in prosecutions for morality offences are the youthful ones (often mere children) in whom the sex-instinct holds the foremost place in their thoughts and feelings. This intensely erotic propensity often can be detected in the wanton facial expression, the sensuous motions, and the manner of speech. But on the other hand one must not be deceived by a madonna-like countenance that such a girl can readily assume; nor by the convincing upturn of the eyes, with which she seeks to strengthen her credibility. To be sure, the coarse sensuousness of her demeanor, coupled with a pert and forward manner, usually leaves no doubt about her type of thought. Even in her early years can be seen in countenance and demeanor the symptoms of the hussy-type, which in later years enable one at first glance to recognize the hardened prostitute. With profuse falsities they shamelessly speak of the coarsest sex-matters. Having come early into bad practices, they can weave these into their testimony and decorate their narratives with the most plausible details . . . It is just such witnesses that often bring into their picture individuals who have never even been near them and that throw suspicion recklessly on the most worthy persons." Monkemoller, Psychology and Psychopathology of Testimony, Part 2, Chap. B, § a6.

In light of the manifest possibilities for injustice it seems only reasonable that a trial judge take advantage of the knowledge and expertise of those more qualified to speak on the question of competency:

"It is further fact that in some of these cases [alleged sex offenses] the personality disturbance which lies at the basis of the accusation would not be discernible to laymen, but that the psychiatrist can in many cases give a definite opin-

ion as to the witness' mental state after he has made an examination." Overholser, The Psychiatrist and the Law 54 (1953).

"If the psychiatrist were given all the facts about the witness' background; if he were given time to do a thorough physical and mental examination; if he could take a psychiatric history on the witness, he could give the trial lawyer a solid opinion about testimonial capacity." Davidson, Testimonial Capacity, 39 Boston U. L. Rev. 172 (1959).

The report or testimony of an examining psychiatrist would provide an invaluable aid to the trial judge in making the threshold determination as to the witness' competency to testify. It is imperative, however, that the determination as to competency be made before the witness takes the stand, if the defendant is not to be unduly prejudiced.

Consequently we hold that, in view of the particular facts and circumstances of this case as heretofore outlined, the trial judge's refusal to grant appellant's timely request for a psychiatric examination of the prosecutrix was in this case not based on sound judicial discretion.

"The term 'sound judicial discretion' always brings into question on appeal whether discretion was 'wisely or unwisely' exercised, or 'unreasonably exercised,' or constituted 'prejudicial abuse' of discretion; or, as stated by the Supreme Court of the United States, whether its exercise was 'clearly erroneous'." *Allman* v. *State* (1967), 248 Ind. 357, 235 N. E. 2d 56, 59.

The resulting prejudice being manifestly obvious, a new trial must be ordered.

We next address ourselves to the question of whether appellant can in fact be retired in view of his allegation that he may be constitutionally tried for an infamous crime *only* on grand jury indictment. Appellant relies on the Fifth Amendment to the United States Constitution which reads in pertinent part as follows:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; . . ."

This state long ago provided an alternative to the grand jury system:

"All public offenses, except treason and murder, may be prosecuted in the circuit or criminal court, by affidavit . . ." Acts 1905, ch. 169, § 118.

Such action was expressly sanctioned in the recent case of *Beck* v. *Washington* (1962), 369 U. S. 541, 8 L. Ed. 2d 98 wherein it was said:

"Ever since *Hurtado* v. *California*, 110 U. S. 516, 28 L. ed. 232, 4 S. Ct. 111, (1884), this Court has consistently held that there is no federal constitutional impediment to dispensing entirely with the grand jury in state prosecutions." 369 U. S. at 544, 8 L. Ed. 2d at 104.

Clearly, appellant has no recognized constitutional right to be charged and tried solely by virtue of a grand jury indictment.

For all the foregoing reasons, the judgment of the trial court is reversed and a new trial ordered.

Judgment reversed.

Arterburn, DeBruler and Givan, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 256 N. E. 2d 901.