Alfred L. SOLOMON, Appellant,

v.

STATE of Indiana, Appellee.

No. 581S129.

Supreme Court of Indiana.

Sept. 1, 1982.

Rehearing Denied Dec. 3, 1982.

Richard Kammen, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant, Alfred L. Solomon, was charged in the Madison Superior Court with the crimes of rape, Ind.Code § 35–42–4–1 (Burns 1979), and burglary, Ind.Code § 35–43–2–1 (Burns Supp.1982). A jury found Appellant guilty on both charges. The trial judge sentenced him to twenty

years on each count, to be served consecutively. In this direct appeal, Appellant raises seven issues as follows:

1. whether the trial judge erred by denying Appellant's Motion for a Psychiatric Examination of the victim;

2. whether the trial judge erred by admitting into evidence an incriminating letter written by Appellant to the victim and delivered by Appellant's wife;

3. whether the trial judge erred by admitting into evidence Appellant's statements to police investigators;

4. whether the trial court improperly limited Appellant's cross-examination of the victim;

5. whether the trial court erred by permitting the victim to remain in the courtroom subsequent to her testimony and despite an order requiring the separation of witnesses;

6. whether the trial court erred by denying Appellant's Motion to Vacate the Judgment; and

7. whether the trial court erred in sentencing Appellant.

In the early morning hours of June 5, 1979, J. O. was awakened by a nude man standing beside her bed. She lived alone in the one-bedroom apartment where these events occurred. As she began to scream, the man threatened to kill her if she did not stop. He covered her face with a pillow and pinned her hands against her chest. It was dark in the room at the time and she could not identify the man, although she said his voice sounded familiar and he called her by her nick-name, Jenny. The man performed oral sex on her several times and then forced her to have sexual intercourse with him. Following intercourse, the man fell asleep on top of J. O. She wiggled free enough to reach a pistol she kept by her bed, and then threw the man off of her. He fled as she ran out of her apartment in the nude and summoned help. By that time it was daylight and she was able to recognize her assailant. He was Appellant Alfred Solomon, a person with whom she was acquainted as his mother and her parents had been good friends for many years.

I

■■■ Prior to trial, Appellant filed a Motion for a Psychiatric Examination of J. O. The apparent purpose of the Motion was to determine whether or not J. O. suffered from some mental or emotional delusion causing a distortion of reality of sufficient magnitude to render her incompetent as a witness. In its discretion, a trial court may order such an examination if it determines one to be necessary. We have held, however, that a defendant on trial for a sex offense has no right to subject the victim to a psychiatric examination. *Page v. State*, (1980) Ind., 410 N.E.2d 1304; *Holder v. State*, (1979) Ind., 396 N.E.2d 112; *Easterday v. State*, (1970) 254 Ind. 13, 256 N.E.2d 901. Appellant cites *Easterday, supra*, wherein this Court found that a trial judge had abused his discretion by denying a Motion for a Psychiatric Examination of the prosecuting witness. In *Easterday*, the prosecuting witness was a ten year-old girl who had a history of implicating men in acts of sexual misconduct and who previously had been known to fabricate stories of sexual incidents. This Court held that in view of the witness' background, the trial judge abused his discretion by failing to have the child examined before permitting her to testify. In the instant case, no evidence was presented to the trial court suggesting any reason to conduct a psychiatric examination to determine J. O.'s competency to testify. Also, the victim was a thirty year-old woman. The trial court did not abuse its discretion in refusing to grant Appellant's Motion. *Page v. State, supra; Holder v. State, supra; Easterday v. State, supra.*

II

While Appellant was in jail, he wrote a letter to J. O. apologizing for "the lascivious disregard" he had had for her and for the "fear and atrociousness" to which he subjected her on "Tuesday morning." In his lengthy letter, Solomon assured J. O. that he had the deepest respect for her and never meant to show any disrespect by the

way he treated her. He stated his conduct was directed by the "demonic forces" of alcohol and drugs. Solomon repeatedly begged J. O. to forgive him and to drop her charges. He told J. O. he knew he would draw a long prison term because of his prior convictions and that this would impose an unbearable hardship upon his wife and small daughter who would not be able to get along without him. Solomon admitted writing the letter which he addressed "Dear Jenny" and signed "Al Solomon." He testified that he delivered it to his wife who subsequently put it into an envelope addressed to J. O. Solomon's wife mailed the letter. When the State offered the letter into evidence, Appellant objected on the grounds that it was a privileged husband-wife communication and therefore inadmissible against him. Solomon testified that he had delivered the letter to his wife only to hold for him, with the thought that he might later send it. Solomon said that he instructed his wife not to mail the letter. His wife testified that while Solomon delivered the letter to her, he did not give her any particular instructions about it. She said she placed the letter in an envelope, stamped it, sealed, addressed it to J. O., and mailed it to her. The trial court found that this was not a privileged husband-wife communication and therefore was admissible into evidence.

█ The trial court properly admitted Appellant's letter to J. O. Communications are privileged when they are between husband and wife and are intended to be confidential by reason of the marital relationship. If, however, the communication is intended to be transmitted to a third person, there is no privilege because the communication is not confidential. *Robinson v. State*, (1981) Ind., 424 N.E.2d 119; *Resnover v. State*, (1978) 267 Ind. 597, 372 N.E.2d 457. The letter here was written by Solomon to J. O. and was given to his wife only for the purpose of having it delivered to J. O. It was neither a confidential husband-wife communication nor was the letter based in any way on Solomon's marital relationship.

█ Appellant further objected to the letter's admission on the grounds that it contained reference to a prior conviction. The trial court, on its own initiative, ordered that all references to Solomon's prior criminal record be deleted. Apparently one such reference on page 6 of the letter was inadvertently not removed. This fact was not brought to the trial court's attention until the following day. Appellant argues that since no one at that point could have testified to his past record, the failure to strike this reference constituted a serious breach of the trial court's order which so prejudiced him that a mistrial should have been granted. The record shows that prior to the letter's admission into evidence, the trial court inquired whether all references to Appellant's past criminal activity had been deleted as instructed. The prosecutor replied in the affirmative. It is the State's contention that Appellant had ample opportunity to inspect the letter as submitted to the jury and to bring to the court's attention the inadvertently missed statement. We agree. Solomon had the opportunity to examine the exhibit before it was submitted to the jury and to determine whether all of the references to his past had been stricken. By failing to note the statement complained of, Solomon effectively misled the trial court into believing that its order had been completely complied with and waived his objections to this mistake. Having had an opportunity to object, Appellant may not wait until evidence has gone into the record and then, after finding it to be unfavorable, ask that it be stricken or that the jury be admonished. *Carman v. State*, (1979) Ind., 396 N.E.2d 344. Furthermore, in view of all the other evidence against Appellant, it does not appear that his one statement, "and because of my past record," so prejudiced him that a reversal is required. *See: Estep v. State*, (1979) Ind., 394 N.E.2d 111, 114.

### III

█ Appellant further contends that the trial court erred in denying his Motion to Suppress certain incriminating statements

he made to the police after his arrest. He specifically argues that the interrogating officer failed to advise him of his *Miranda* rights to have counsel present during the interrogation. *See: Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The record shows that prior to interrogation, Solomon was read the following advisement.

"I, the undersigned, have been informed as to my constitutional rights, that I am entitled to legal counsel present at all times. I have also been advised that if I am unable to pay for counsel that the court will appoint an attorney to represent me. I'm not required to make any statement whatsoever, that any statement I make, either oral or written, may be used against me in court."

Appellant was then given to read an advice card on which the above advisement was printed, along with a waiver of rights statement which he signed. The interrogating officer testified that he additionally advised Solomon that he could use the telephone at that time to contact an attorney if he wished to do so. Appellant stated to the officer that he might want to telephone his parents later, but that he did not wish to use the phone right then.

Appellant relies upon *Franklin v. State,* (1974) 262 Ind. 261, 314 N.E.2d 742. In *Franklin,* this Court found that only advising a defendant of his "right to have an attorney present to consult with" is not a clear enough expression of that defendant's right to the presence of counsel during interrogation because the time of such entitlement is not specified. In *Franklin,* however, this Court noted that prior to interrogation, the defendant had twice been given paper advisements of his rights. Accordingly, this Court found that the defendant had been amply advised. In *Burton v. State,* (1973) 260 Ind. 94, 292 N.E.2d 790, this Court noted that it is not necessary to use the exact wording of *Miranda* to communicate to a defendant his rights, including his right to be represented by an attorney. The defendant in *Burton* was informed that he had "a right to have a lawyer present now", that "he had a right

to have an attorney at that time or at any time" and that "if he so indicated he wanted an attorney we would stop and get him one." These advisements were found to essentially convey the *Miranda* message.

The instant case should follow *Burton.* Appellant was clearly informed that he had a right to have an attorney present at all times, and that one would be appointed to represent him if he so desired. He was further told that he would be immediately allowed to call an attorney if he wished. Solomon was also given a written advisement of his *Miranda* rights and a waiver which he admits he signed. Appellant was amply and properly advised of his right to counsel before being interrogated by the police. He voluntarily declined to consult with an attorney before making his incriminating statements. The trial court properly denied Appellant's Motion to Suppress.

IV

■ Appellant contends the trial court erred in limiting his cross-examination of the victim. The record shows that defense counsel attempted to elicit testimony from the victim as to her relationships with several men. J. O. testified that she had been engaged to a man a number of years ago but that she had broken the engagement when she discovered that her fiancée was seeing another woman by whom he fathered a child. She also said she was presently seeing another man, but that they were not seriously involved. Defense counsel's questioning then focused on J. O.'s relationship with an unidentified player on the Cincinnati Reds professional baseball team. J. O. testified that they had introduced themselves to each other once while she was spending a week in Florida as a spectator of the Red's spring training. Her complete testimony tended to show that J. O. travelled frequently and extensively to watch this man play baseball. She specifically testified that she was "a real big fan of his" and that she had "known him quite a while." When asked if she was "at least infatuated with this particular ball play-

er?", J. O. testified: "I've always been that way before I ever knew him." Defense counsel was able to establish that J. O. had been in the player's apartment many times.

When defense counsel asked J. O. whether she had visited the baseball player in any city other than Cincinnati during the summer of 1977, the State objected on relevancy grounds and the court sustained. Appellant then made an offer to prove in support of allowing further testimony about J. O.'s relationships. Defense counsel indicated he would show that J. O. had pursued the baseball player for over three years. Counsel said he would show that J. O. had been rebuffed several times by this man and by others with whom she had anticipated matrimony. He said that his purpose was to prove that the charges against Appellant were a result of J. O.'s desire for revenge. The defense theory was that J. O. agreed to have sexual relations with Solomon, but became angry after the intercourse when Solomon made insulting remarks to her concerning her past failures with men. Appellant later personally testified that J. O. became very angry because of his remarks and that she determined to get revenge by charging him with rape.

The trial court ruled that Appellant could not pursue this line of questioning unless the victim admitted that the alleged remarks might have been made. In the event the victim flatly denied that the conversation ever took place, Appellant was directed to accept her answer without further questioning and to later seek to impeach J. O. with some contrary evidence. Appellant's counsel argued strenuously that he should be permitted to elicit further testimony from the victim concerning the extent of her relationship with the ballplayer since that testimony would enable the jury to judge the credibility of J. O.'s statement that the alleged conversation never took place.

 The trial court correctly ruled that Appellant's hoped for testimony went beyond the scope of J. O.'s direct examination and was therefore irrelevant and properly excluded. A party is permitted to test the credibility of a witness on cross-examination. However, a party may not establish his defense by cross-examining a witness about matters not within the scope of direct examination. *Ringham v. State*, (1974) 261 Ind. 628, 308 N.E.2d 863; *Carter v. State*, (1981) Ind.App., 422 N.E.2d 742. The scope and extent of cross-examination are largely within the discretion of the trial court. *Dean v. State*, (1980) Ind., 398 N.E.2d 1270. In *Dean*, we held that permissible cross-examination extends to all phases of the subject matter covered on direct examination and may include any matter which tends to elucidate, modify, explain, contradict or rebut testimony given in chief by the witness. *See also: Wofford v. State*, (1979) Ind., 394 N.E.2d 100, 105; *Pearish v. State*, (1976) 264 Ind. 339, 345, 344 N.E.2d 296, 299. The cross-examination in this case went far beyond any subject matter raised in direct examination.

The trial court did not abuse its discretion. A trial judge is not required to permit a defendant in this type of case to delve into irrelevant relationships in the victim's past on the representation that they may tend to present to the jury a question of the victim's credibility. Appellant personally testified to his version of the facts and circumstances of his encounter with J. O. The record shows that Appellant was given wide latitude to explore the general nature of the victim's relationships with other men. The jury was therefore presented with more than sufficient evidence from which to judge the credibility of J. O. and of Appellant. There was also sufficient evidence presented which touched upon the conversation they were alleged to have had.

V

 At the beginning of Appellant's trial, the judge ordered a separation of witnesses. Appellant contends that this order was violated when the trial court permitted J. O. to remain in the courtroom after her testimony. The record indicates that J. O. was never recalled by the State to further testify after she had heard other witnesses testify. The principal reason for the sepa-

ration of witnesses is to keep later witnesses from hearing the questioning and testimony of earlier witnesses. *Dixon v. State,* (1976) 264 Ind. 651, 348 N.E.2d 401. In the absence of procurement or connivancy, it is within the discretion of the trial court whether to allow the testimony of a witness who has violated the order. The trial court's discretionary ruling will not be disturbed unless there is a manifest abuse of discretion. *Rinard v. State,* (1976) 265 Ind. 56, 351 N.E.2d 20; *Dudley v. State,* (1970) 255 Ind. 176, 263 N.E.2d 161; *McCoy v. State,* (1960) 241 Ind. 104, 170 N.E.2d 43. The purpose of the separation order was not violated here so we find no manifest abuse of discretion.

Appellant alternatively argues that the victim's presence and demeanor in the courtroom throughout the trial had a psychological and prejudicial effect on the jury. At trial, Appellant's counsel called his wife who testified that she observed the victim "dabbing her eyes and blowing her nose," giving her the impression that the victim was crying. Appellant argues that this conduct caused the jury to sympathize with the victim, unduly prejudicing them against him. The trial judge, however, stated in the record that he had been watching the victim throughout the proceedings and that he had neither seen her cry nor wipe her eyes. It was his observation that Appellant was not unduly prejudiced by J. O.'s presence in the courtroom. We find the trial judge did not abuse his discretion in making this determination.

## VI

Following trial and prior to sentencing, Appellant filed a Motion to Vacate Judgment alleging, *inter alia,* certain misconduct involving three members of the jury. The trial court permitted Appellant a hearing to offer evidence in support of his Motion. The first allegation of misconduct was that juror Willie Rayford was acquainted with Appellant's step-mother and that there existed between them a dispute rendering that juror incapable of reaching a fair and impartial verdict. Appellant's step-mother, Mrs. Doris Solomon, testified that Rayford had been her work foreman for about one and a half years, up until ten months prior to Appellant's trial. She said that she once had a disagreement with Mr. Rayford over her job performance and although they had resolved the matter, Rayford stated at the time that he would "get even with somebody that made him mad." Mrs. Solomon informed defense counsel of these facts subsequent to trial. Mr. Rayford testified that he had been Mrs. Solomon's supervisor and that he had heated discussions with Mrs. Solomon over her job performance, but that his relationship with Mrs. Solomon was no different than the ones he had with other employees. He stated, however, that he had no knowledge at the time of the trial that Mrs. Solomon was Appellant's step-mother and that he did not know about their relationship until the morning of the hearing to which he had been called to testify. He said he bore no particular animosity towards Mrs. Solomon. In addition, Appellant argues as improper the fact that Mr. Rayford stated on his juror application form that he had never been involved in a law suit. In truth, he previously had been involved in child support proceedings. Rayford testified at the hearing that he did not know the support proceedings constituted a lawsuit since no jury was present and there was not a trial-type procedure. The evidence before us clearly indicates that Appellant's claim of misconduct is without basis. Mr. Rayford not only denied harboring any ill will against Mrs. Solomon, but emphatically stated that he did not even know of her relationship to Appellant until after the trial. Moreover, it is evident that his erroneous answer on the juror's questionnaire form was due to his admitted misunderstanding of the term "lawsuit", and not as a result of any deliberate misstatement. There was more than sufficient evidence here from which the trial court could determine that no juror misconduct had occurred. *See: Grassmyer v. State,* (1981) Ind., 429 N.E.2d 248, 254.

Appellant further claims impropriety based on juror Daniel Hayden's statement on his juror questionnaire form that he had never before served as a juror in a criminal trial. Hayden completed, signed, and filed his form in June, 1980, when he became a prospective juror. At that time his statement was correct. Subsequently, Hayden served as an alternate juror in a criminal case. The misunderstanding here arose because Hayden was never asked to complete a second questionnaire. Regardless, it was revealed by the prosecutor's questioning in voir dire that Hayden had served on a jury in a criminal trial. There is, therefore, no basis for finding any misconduct on the part of this juror.

The third and last allegation of juror misconduct is that juror Patricia Agnew agreed to find Appellant guilty as a result of coercion and undue influence. The basis for this claim is that because Agnew was reluctant to answer during the trial court's poll of the jury after they had rendered their verdict, her vote must have been forced. We find no merit in this contention. Besides, it is well settled that a defendant may not interrogate the jury for the purpose of impeaching their verdict. *Stinson v. State*, (1974) 262 Ind. 189, 313 N.E.2d 699. In *Stinson*, 262 Ind. at 198, 313 N.E.2d at 704, we stated:

> "If this Court were to permit individual jurors to make affidavits or give testimony disclosing the manner of deliberation in the jury room and their version of the reasons for rendering a particular verdict, there would be no reasonable end to litigation. Jurors would be harassed by both sides of litigation and find themselves in a contest of affidavits and counter-affidavits and arguments and re-arguments as to why and how a certain verdict was reached. Such an unsettled state of affairs would be a disservice to the parties litigant and an unconscionable burden upon citizens who serve on juries. The trial court did not err in refusing to set aside the verdict by reason of the affidavits of the jurors."

There was no evidence of jury misconduct on the part of any of these three jurors. The trial court properly denied Appellant's Motion to Vacate Judgment.

## VII

Finally, Solomon contends that the trial court failed to make an adequate statement of its reasons for aggravating his sentences beyond the criminal code's prescriptions. Appellant was convicted of rape and burglary, both class B felonies in his case. According to Ind.Code § 35–50–2–5 (Burns 1979): "a person who commits a class B felony shall be imprisoned for a fixed term of ten [10] years, with not more than ten [10] years added for aggravating circumstances." Solomon received twenty years for each of his convictions.

In sentencing, the trial court found that there were aggravating circumstances in Appellant's case. Specifically, the court found that Solomon had an adult criminal record and was presently being sentenced for these two additional crimes. Appellant had previously been convicted of the crimes of burglary and assault and battery with intent to commit a felony, to wit: rape. A defendant's history of criminal activity is one of the factors that a trial court may consider as an aggravating circumstance. Ind.Code § 35–4.1–4–7(a), (c)(2) [§ 35–50–1A–7(a), (c)(2) (Burns 1979) ]; *Rowley v. State*, (1979) Ind., 394 N.E.2d 928. In *Rowley*, this Court held that although the trial court could have made a more cohesive statement of the factors it considered to be aggravating circumstances, it had nonetheless given an adequate statement of its reasons. We so found because the court made reference in its record to the nature of the defendant's crime and to his prior criminal activity. The same was true in *Gary v. State*, (1980) Ind.App., 400 N.E.2d 215. In *Gary*, the trial court's imposition of an enhanced sentence "due to the rather extensive criminal record of this defendant" was affirmed on appeal by our Court of Appeals. *See also: Spinks v. State*, 437 N.E.2d 963 (Ind.1982).

As in *Rowley*, *Gary* and *Spinks*, the trial judge here could have made a better state-

ment of his reasons for aggravating Appellant's sentences so as to aid this Court in our review of the sentences. We do not find, however, that the reasons given are inadequate. We hold that the sentences imposed were not manifestly unreasonable and, therefore, must be affirmed. Ind.R.App.Rev.Sen. 2(1).

The trial court is in all respects affirmed.

GIVAN, C. J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

The aggregate of the advice of rights, consisting of both written and verbal advisements, does not conform to the constitutional requirements of *Miranda v. Arizona*, (1966) 384 U.S. 536, 86 S.Ct. 1602, 16 L.Ed.2d 694. In that case the United States Supreme Court said:

"Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and *to have the lawyer with him during interrogation* under the system for protecting the privilege we delineate today.... This warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead." (Emphasis added.) 384 U.S. at 471–472, 86 S.Ct. at 1626.

Appellant was given the written advisement that he was "entitled to legal counsel present at all times." He was told in addition that he could use the telephone at that time to contact an attorney if he wished to do so. This advisement clearly informed appellant that he had the present right to consult with a lawyer, and to do so over the telephone, but did not inform him that one of those times during which he is entitled to the presence of counsel is the ongoing process of initial interrogation. This the *Miranda* case expressly requires. The advisement must clearly inform a suspect that he has the right to have a lawyer present while

being questioned. Cf. *Franklin v. State*, (1974) 262 Ind. 261, 314 N.E.2d 742. These advisements fail in this regard. I vote to reverse this conviction and remand for a new trial at which the challenged statements are excluded.