William P. HOOVER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 90A05–9101–CR–00028.

Court of Appeals of Indiana,
Fifth District.

Dec. 9, 1991.

Geoffrey A. Rivers, Muncie, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for appellee-plaintiff.

RUCKER, Judge.

William P. Hoover was convicted of three counts of child molesting,[1] as Class C felonies. Hoover presents twenty-three issues for our review which we consolidate and rephrase as:

1. Did the trial court err in finding the child witnesses competent to testify?

2. Did the trial court err in denying Hoover's motion for psychiatric examination of the child witnesses?

3. Did the trial court err in admitting videotaped statements into evidence?

4. Did the trial court err in refusing to give Hoover's tendered jury instruction concerning the special status of child witnesses?

5. Did the trial court abuse its discretion in denying Hoover's motion for change of judge?

6. Did the trial court err by admitting into evidence testimony of the mothers of three of the child witnesses over Hoover's hearsay objection?

7. Did the trial court err in denying Hoover's motion for mistrial?

 We affirm.[2]

---

1. Ind.Code § 35–42–4–3.

2. This court granted Hoover leave to file a brief in excess of fifty pages. We note his seventy-two page brief could have been substantially shortened by following Ind.Appellate Rule 8.3. For example, Hoover's lengthy statement of facts did not follow a narrative format. Rather it consisted of detailed descriptions of each witnesses' trial testimony. We have stated repeatedly that our appellate rules contemplate a narrative statement of the facts, and that a witness by witness summary of the testimony is not a statement of facts within the meaning of Ind.Appellate Rule 8.3(A)(5). *Walters v. Dean* (1986), Ind.App., 497 N.E.2d 247, 249. *See also,* 4A Indiana Practice § 7.2 (1990). Six of the twenty-three issues in the Statement of Issues section of Hoover's brief contravene Ind.Appellate Rule 8.3(A)(3); they are neither presented for our review nor argued in Hoover's brief. Despite Hoover's failure to comply with the Appellate Rules of Procedure and the holdings of this court, we address the merits of the issues before us.

William and Betty Hoover, husband and wife, served as baby sitters for several children. Among them were P.J., H.C., L.C., and D.C. The Hoovers, whom the children called "Grandpa Bill" and "Grandma Betty," frequently allowed the children to spend the night, took the children on outings, and regularly escorted the children to church on Sundays.

In January, 1989, D.C. told her mother that her "bottom" was sore. D.C. explained that Grandpa Bill (Hoover) touched her; however, the touching was a secret. D.C. told her mother that Hoover had also touched H.C. and L.C., but asked her mother not to tell Grandma Betty because she would get angry with them. That evening, D.C.'s mother telephoned the mother of eight-year old H.C. and three-and-a-half-year-old L.C. and advised her of D.C.'s comments. H.C. started crying when her mother began questioning her. The police were contacted immediately.

Within a few days, Officer Teresa Oxley of the Hartford City Police Department met with D.C., H.C., and another child, P.J. and conducted a videotaped interview. Over a year later, In April, 1990, Officer Oxley also conducted a videotaped interview with L.C. During the videotaped interviews, each of the girls recounted instances of Hoover touching their buttocks, vaginal areas, and chests under their clothing. At trial, the videotapes of D.C., H.C., and L.C. were admitted into evidence without objection. P.J. testified in person.

Hoover testified in his own defense and admitted grabbing the children inside their clothing, tickling and squeezing their groin areas and buttocks, touching P.J.'s chest while tickling her, and rubbing L.C.'s chest under her clothing. However, Hoover denied he engaged in such conduct with the intent to arouse his or the children's sexual desires.

## I.

■ Hoover alleges the trial court erred in determining the State's minor witnesses were competent to testify at trial.

■ The test of competency of a witness is whether the witness has sufficient mental capacity to perceive, to remember and to narrate the incident observed and to understand and appreciate the obligation of an oath. *Hughes v. State* (1989), Ind., 546 N.E.2d 1203, 1209. It is the trial court's responsibility to determine whether a witness is competent to testify and the trial court's decision will only be reversed for a manifest abuse of discretion. *Brewer v. State* (1990), 562 N.E.2d 22.

Eleven-year-old P.J. was the only child witness called to testify at trial. The oath was administered and P.J. testified Hoover touched her in her "private parts" and went on to explain she was referring to her vagina and breasts. *Record* at 986–87. P.J. also testified that she observed Hoover touch H.C., D.C. and L.C. on their breasts and that most of the times the touching was under their clothing, but sometimes it occurred on top of their clothing. *Record* at 989.

Carol Mott, a therapist with Family Services of Marion, Indiana testified P.J. was referred to her for counseling after a report of sexual abuse. Without objection, Mott testified P.J. was not prone to exaggerate or fantasize about sexual matters, and that P.J. had no motivation to harm Hoover.

The record before us amply demonstrates P.J. had sufficient mental capacity to perceive, to remember and to narrate the incident concerning Hoover's conduct. The record also demonstrates P.J. had the ability to understand and appreciate the obligation of an oath. The trial court did not err in determining P.J. was competent to testify at trial.

■ Hoover next claims Ind.Code § 34–1–14–5 establishes a rebuttable presumption that H.C., D.C. and L.C. were incompetent witnesses and the State failed to overcome that presumption. Under this statute children under the age of ten are not competent witnesses unless it appears that they understand the nature and obligation of an oath.

Trial began in this case on July 31, 1990. Effective July 1, 1990, I.C. § 34–1–14–5

was amended by P.L. 37–1990. The amendment deleted the provision relating to children under ten years of age. Hence, for purposes of competency, a child witness is treated no differently than any other witness. Ordinarily, the test for competency is whether the witness has sufficient mental capacity to perceive, to remember and to narrate the incident observed and to understand and appreciate the nature and obligation of an oath. *Hughes, supra.* It is within the discretion of the trial court to determine competency of a witness and we will reverse the court's decision only upon a showing of abuse of discretion. *Id.*

We first note, whether H.C., D.C. and L.C. could "understand and appreciate the nature and obligation of an oath" is not relevant to this case. The State filed a petition to introduce into evidence the out-of-court videotaped statements of H.C., D.C., and L.C. pursuant to Ind.Code § 35–37–4–6. Under this statute, a videotape statement of a child may be introduced into evidence, provided other statutory conditions are met, even where the child is "incapable of understanding the nature and obligation of an oath." Ind.Code § 35–37–4–6(d). However, despite the statute, H.C., D.C., and L.C. did "understand and appreciate the nature and obligation of an oath." [3]

The videotapes clearly show each of the children had the mental capacity to perceive, to remember, to recount their experiences and to demonstrate what happened to them. The trial court did not abuse its discretion by determining the child witnesses were competent to testify.

## II.

■ Hoover also argues the trial court erred in denying his request for a psychiatric examination of the child victims. He claims such an examination was necessary because the victims were not competent to testify.

■ We have already held the trial court did not abuse its discretion in determining that the child witnesses were competent to testify. Moreover, a defendant charged with a sex offense does not have the right to subject his victim to a psychiatric examination. *Lowe v. State* (1989), Ind., 534 N.E.2d 1099, 1101. Rather, as with a determination of competency, the necessity for a psychiatric test rests with the sound discretion of the trial court whose decision will not be reversed unless the defendant demonstrates an abuse of discretion. *Id.*

In support of his argument Hoover cites *Easterday v. State* (1970), 254 Ind. 13, 256 N.E.2d 901. [4]

3. Before interviewing each of the children concerning Hoover's conduct, Officer Oxley asked if they knew the difference between telling the truth and telling a lie. Each child answered affirmatively. *Record* at 825, 886, and 894. Oxley then inquired, "What would happen if you tell a lie?" D.C. responded, "I get a whippen," and L.C. and H.C. responded, "You get in trouble," *Record* at 825, 886, and 894.

4. We here quote that portion of *Easterday* on which Hoover relies:

[A]s to the nature of a female witness in such a [sex offense] case, how is the trial judge to make his determination? ...

There is, however, at least one situation in which chastity may have a direct connection with veracity, viz. when a woman or young girl testifies as complainant against a man charged with a sexual crime,.... Modern psychiatrists have amply studied the behavior of errant young girls and women coming before the courts in all sorts of cases. Their psychic complexes are multifarious, distorted partly by inherent defects, partly by diseased derangements or abnormal instincts, partly by bad social environment, partly by temporary

psysiological or emotional conditions. One form taken by these complexes is that of contriving false charges of sexual offenses by men. The unchaste (let us call it) mentality finds incidental but direct expression in the narration of imaginary sex-incidents of which the narrator is the heroine or the victim.... The real victim, however, too often in such cases is the innocent men; .... 3 Wigmore Evidence § 924(a) (3rd Ed.1940).

The most dangerous witnesses in prosecutions for morality offenses are the youthful ones (often mere children) in whom the sex-instinct holds the foremost place in their thoughts and feelings. This intensely erotic propensity often can be detected in the wanton facial expression, the sensuous motions, and the manner of speech. But on the other hand one must not be deceived by a madonna-like countenance that such a girl can readily assume; nor by the convincing upturn of the eyes, with which she seeks to strengthen her credibility. To be sure, the course sensuousness of her demeanor, coupled with a pert and forward manner, usually leaves no doubt about her type of thought. Even in her early

In *Easterday,* our supreme court reversed a conviction where the trial judge had denied a motion for psychiatric examination of a ten-year-old girl upon whose uncorroborated testimony the conviction rested. The girl had implicated other men in acts of sexual misconduct and had admitted fabricating similar stories about other people.

Unlike *Easterday,* there was no evidence in this case that the victims implicated anyone other than Hoover, nor that the victims fabricated similar stories about other people. The case at bar is more analogous to *Lowe, supra.* In *Lowe,* our supreme court upheld the denial of a psychiatric examination of a thirteen-year-old child molesting victim. Here, as in *Lowe,* the trial judge had the opportunity to observe the victim at length. The trial court properly exercised its discretion in denying Hoover's request for a psychiatric examination of the children. We find no abuse of discretion and no error.

### III.

Hoover next contends the court erred in admitting the videotaped statements into evidence over his objection. He argues the statements contained references to uncharged misconduct, hearsay testimony, and improper interview techniques by the investigating officer.

■ Prior to trial, Hoover filed a number of motions to suppress the videotaped statements on various grounds. The pretrial motions were denied. Our review of the record reveals Hoover did not object during trial when the videotaped statements of D.C., H.C., and L.C. were admitted into evidence and played to the jury. Failure to object at trial when the evidence is offered results in waiver of the alleged error even where the defendant has made a pre-trial motion to suppress the evidence. *Ballard v. State* (1989), Ind., 537 N.E.2d 32.

■ Apparently recognizing he did not object at trial to the admission of the videotaped statements, Hoover invites us to review this issue under the fundamental error rule. In order to be fundamental, the error must be so prejudicial to the rights of the defendant that he could not have received a fair trial. *Howey v. State* (1990), Ind., 557 N.E.2d 1326. Fundamental error has also been characterized as error which constitutes clear, blatant, violations of basic and elementary principles, and the resulting harm or potential for harm must be substantial. *Grey v. State* (1990), Ind., 553 N.E.2d 1196, *reh. denied.*

■ Hoover challenges that portion of L.C.'s videotaped statement in which she made a reference to Hoover improperly touching children other than herself. These particular children were not witnesses in this case and no charges were filed against Hoover concerning them. Evidence of separate, independent and distinct crimes is generally inadmissible to establish guilt of an accused. *Bixler v. State* (1989), Ind., 537 N.E.2d 21. However, there is an exception for those acts involving or showing a 'depraved sexual instinct.' *Id.; Maynard v. State* (1989), Ind., 513 N.E.2d 641, 647.

Here, the testimony that Hoover touched two children for whom he had the responsibility of baby-sitting, in the same manner he touched P.J., H.C., L.C., and D.C. was admissible to show Hoover's depraved sexual instinct. There was no error here fundamental or otherwise.

■ Hoover also challenges that portion of H.C.'s videotaped statement in which H.C. testified that P.J. told her that she was scared. Hoover argues H.C.'s statement constitutes inadmissible hearsay. Even assuming the statement was inadmissible hearsay, its admission into evidence was not fundamental error. Improper ad-

---

years can be seen in countenance and demeanor the symptoms of the hussy-type, which in later years enable one at first glance to recognize the hardened prostitute. Monkemoller, Psychology and Psychopathology of Testimony, Part 2, Chap. B, § a 6.

*Id.,* 256 N.E.2d at 905.

*Easterday* has not been overruled. However, we do not believe our Supreme Court would today approve of the language quoted.

mission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy this court that there is no substantial likelihood the questioned evidence contributed to the conviction. *Jaske v. State* (1989), Ind., 539 N.E.2d 14, 22. In this case, there is no substantial likelihood that H.C.'s hearsay statement about what P.J. told her contributed to Hoover's conviction for child molesting. Wholly apart from H.C.'s hearsay statement, other independent evidence overwhelmingly points to Hoover's guilt. Further, P.J. was sworn as a witness at trial and testified without objection that she was afraid of getting into trouble if she told anyone about Hoover touching her. Any error in the admission of hearsay evidence was rendered harmless by the admission of similar evidence. *Choate v. State* (1984), Ind., 462 N.E.2d 1037.

Hoover further challenges the videotaped statements of H.C., L.C., and D.C. by arguing Officer Oxley's interviewing techniques of the three girls was improper. He claims the Officer induced desired answers from the children by asking compound, intimidating, leading, and confusing questions. In support of his assertions, Hoover directs our attention to selected portions of the written transcript of the videotaped statements. Those portions of the written record are misleading. Upon reviewing the actual videos, we find they present a quite different picture. The videos clearly show the children sometimes verbally answering questions, at other times shaking their heads yes or no in response, and still at other times, gesturing and demonstrating with their hands. We find nothing improper in Officer Oxley's interview techniques. The trial court did not err in allowing the videotaped interviews into evidence.

### IV.

■ Hoover next contends that is was error for the trial court to refuse his tendered jury instruction concerning the alleged special status of child witnesses. The instruction reads in relevant part:

You have heard the testimony of [D.C., H.C., L.C., and P.J.] and you may be wondering whether their young age should make any difference. What you must determine, as with any witness, is whether that testimony is believable. Did the witness understand the question? Does the witness have a good memory? Is the witness telling the truth?

Because young children may not fully understand what is happening here, it is up to you to decide whether they understand the seriousness of their appearance as a witness at this trial. In addition, young children may be influenced by the way that questions are asked. It is up to you to decide whether [D.C., H.C., L.C., and P.J.] understood the questions asked of them. Keep this in mind when you consider each of their testimony.

■ In reviewing a trial court's decision to refuse a tendered instruction, we consider whether the instruction correctly states the law, whether there is evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions which are given. *Phillips v. State* (1990), Ind. 550 N.E.2d 1290, *reh. denied.*

The trial court properly refused Hoover's tendered instruction for two reasons. First, the law in this jurisdiction is well settled that a trial court may properly refuse a tendered instruction which directs the jury to view with caution a particular witness' testimony. *Reinbold v. State* (1990), Ind., 555 N.E.2d 463 (defendant not entitled to tendered instruction singling out psychiatric testimony); *Clark v. State* (1986), Ind., 498 N.E.2d 918 (refusal to give tendered instruction directing jury to view identification witness' testimony with caution); *Tevis v. State* (1985), Ind., 480 N.E.2d 214 (refusal to give tendered instruction directing jury to view informants' testimony with caution); *Collins v. State* (1983), Ind., 453 N.E.2d 980 (refusal to give tendered instruction regarding weight and credibility of police testimony). Second, the trial court gave its own instructions

covering the weight and credibility to be given the testimony of witnesses.

The trial court did not err in refusing to give Hoover's tendered jury instruction.

### V.

Hoover next claims the trial court erred in refusing to grant his motion for change of judge. We disagree.

Prior to trial, Hoover entered a plea agreement with the State. The trial court conducted a guilty plea hearing at which Hoover pled guilty under the terms of the agreement and provided a factual basis for the plea. After taking the matter under advisement and ordering a presentence report, the trial court rejected the agreement.

Hoover's claim of error is two-pronged, neither of which has merit. First, he contends the probation officer who compiled the presentence report demonstrated bias and prejudice which was somehow imputed to the judge. Second, Hoover complains the judge was biased and prejudiced against him "by rejecting the Plea Agreement as not harsh enough." *Appellant's Brief,* p. 55 quoting *Record* at 213.

■ Hoover presents no authority in support of his contention that the probation officer's alleged bias and prejudice is imputed to the judge. This argument is waived. *Keller v. State* (1990), Ind., 549 N.E.2d 372.

■ In support of his contention that the judge was biased and prejudiced against him, Hoover points to statements made by the judge when rejecting the plea agreement. Contrary to Hoover's assertions, the court's statements do not demonstrate a personal opinion of Hoover's guilt or innocence. Rather, the statements merely set forth the trial court's rationale for rejecting the agreement. Namely, the trial judge found a deficiency in the factual basis for the guilty plea and determined the terms of the agreement were inappropriate for the admissions made by Hoover.

■ The law presumes that a judge is unbiased and unprejudiced in matters which come before him. *Smith v. State*

(1989), Ind., 535 N.E.2d 1155. The party moving for a change of judge must establish actual personal bias placing the moving party in jeopardy to overcome this presumption. *Id.* Such bias must be shown from the judge's conduct. *Id.* A trial court's rejection of a plea agreement does not require that the judge be disqualified, absent a showing of specific acts by the judge during trial which prejudiced the defendant. *Kail v. State* (1988), Ind.App., 528 N.E.2d 799; *Stacks v. State* (1978), 175 Ind.App. 525, 372 N.E.2d 1201.

Here, Hoover has failed to show any specific acts by the judge which prejudiced him. The trial court did not err in refusing to grant Hoover's motion for change of judge.

### VI.

■ Hoover also claims the trial court erred in admitting the testimony of the victims' mothers over his hearsay objection.

The mother of D.C. testified concerning the evening D.C. first told her that D.C.'s "bottom" was sore and that Grandpa Bill (Hoover) touched her, however the touching was a secret. The mother of H.C. and L.C. testified that when she asked her daughters whether "Bill" had been "messin[g] with" them, H.C. began to cry. According to Hoover, the mothers' testimony included inadmissible hearsay and requires reversal of his conviction.

We first note, even assuming the mothers' testimony included inadmissible hearsay, any error in its admission is harmless. Erroneously admitted hearsay evidence does not require reversal in the absence of harm. *Shumaker v. State* (1988), Ind., 523 N.E.2d 1381. Here, Hoover suffered no harm. He took the stand in his own defense and corroborated much of P.J.'s testimony as well as H.C., L.C., and D.C.'s videotaped statements. Hoover admitted grabbing the children inside their clothing, and tickling and squeezing the children's groin areas and buttocks.

In any event, we find no error in the admission of the mothers' testimony over Hoover's hearsay objection. In support of his argument, Hoover cites *Stone v. State*

(1989), Ind.App., 536 N.E.2d 534, *trans. denied,* in which this court reversed the defendant's conviction after the trial court permitted six witnesses to repeat the child victim's account of a sexual assault. We indicated the rampant repetition "unduly emphasized the inflammatory aspects of the State's case." *Id.* at 540.

The facts in this case are clearly distinguishable from the facts in *Stone.* Here, the mothers' testimony was merely a summary of the children's initial account of the sexual activity and explained why the mothers reported the incident to the police. Their testimony did not "unduly emphasiz[e] the inflammatory aspects of the State's case," and was not the drumbeat repetition which concerned us in *Stone.*

The trial court did not err by admitting the mothers' testimony over Hoover's hearsay objection.

## VII.

Finally, Hoover complains the trial court erred in refusing to grant his motion for mistrial. We disagree.

Hoover took the stand in his own defense. In addition to being replete with contradictions, his testimony was also inconsistent with statements he had previously given to the court as a part of the factual basis for the rejected plea agreement. In the middle of the prosecutor's cross-examination of Hoover, the court excused the jury from the courtroom and then read to Hoover the criminal statute defining perjury. Hoover acknowledged that he could be charged with perjury if he made material statements under oath, either at his former guilty plea hearing or at trial, which were inconsistent to the degree that one of them must be false.

The jury returned and the prosecutor resumed cross-examination. After numerous questions and answers, the prosecutor asked Hoover whether he was "aware of what the penalties for perjury are in this state." *Record* at 1218. Hoover's attorney objected to the question and asked for a mistrial. The objection was sustained; however, the motion for mistrial was denied.

The ruling on a motion for mistrial is a matter committed to the sound discretion of the trial court and we will reverse only upon abuse of that discretion. *Jackson v. State* (1988), Ind., 518 N.E.2d 787. A defendant is entitled to a mistrial only where he has been placed in a position of great peril to which he should not have been subjected. *Id.* Hoover contends the question concerning perjury implied the prosecutor had personal knowledge that Hoover was lying and concludes the prosecutor engaged in prosecutorial misconduct. Hoover also contends the prosecutor's question injected an evidentiary harpoon into the proceedings. In support of his argument, Hoover directs our attention to Ind.Code § 35–35–1–4(d) which essentially dictates that a plea of guilty, which is not accepted by the court, is not admissible as evidence at a subsequent trial. Hoover's reliance on this statute is misplaced.

The prosecutor did not introduce Hoover's rejected plea agreement into evidence. Nor, did the prosecutor's question necessarily imply the prosecutor had personal knowledge of Hoover lying based on statements Hoover made at his guilty plea hearing. At trial, Hoover testified he did not put his hands inside the children's pants; he then recanted and admitted placing his hands down the pants of one or more of the children. He later denied putting his hands in the pants of P.J., H.C., and L.C.; and then admitted placing his hands down the backs of the pants of "all the children" and tickling or pinching their "bottom areas." The jury here could have reasonably inferred the prosecutor's question related to Hoover's obviously inconsistent and contradictory testimony and not any personal information the prosecutor may have had.

In order to qualify as an evidentiary harpoon, it must be shown that there was a deliberate use of improper evidence calculated to prejudice the defendant in the eyes of the jury. *Keller v. State* (1990), Ind., 560 N.E.2d 533, 535. In the case at bar there was no evidence presented to the jury that the prosecutor had personal knowledge of Hoover lying. The question

concerning perjury was asked; however, because of Hoover's objection, there was no response. The only evidence before the jury of Hoover's lying was his own trial testimony.

A mistrial is appropriate only where no other remedy can rectify the error. *Kelley v. State* (1990), Ind., 555 N.E.2d 140. Here, Hoover did not request admonishment of the jury, an alternative remedy which could have cured any alleged error. *See Brendel v. State* (1984), 460 N.E.2d 919. Because Hoover's objection to the prosecutor's question was sustained, any alleged error which may have been caused by the prosecutor's question was adequately remedied. The trial court did not abuse its discretion in denying Hoover's motion for mistrial.

Judgment Affirmed.

BARTEAU and STATON, JJ., concur.